SAMUEL WOODWORTH, Appellant, *v.* WILLARD H. BENNETT, Respondent.

48   273
134   116

43        273
e 75 AD²124

Where an illegal contract has been fully executed, and money paid thereunder remains in the hands of a mere depositary, who holds the money for the use of one of the parties to the contract, an action brought to recover the money so held will be sustained.

A third person, who receives money from one party to be paid to another (which payment could not have been enforced between the two parties, on account of the illegality of the transaction between them), cannot interpose such illegality as a defence to an action brought against him to enforce payment.

Where, however, the recovery of the money requires the enforcement by the court of any of the unexecuted provisions of the illegal contract, no action can be maintained.

Accordingly, where four, one a State engineer, entered into an arrangement, by which one of them was to bid for certain public work, and all to be jointly interested in the bid, and before the work was awarded, they agreed to and did withdraw their claim to the work and sold their bid for $400 to a party who was a higher bidder for the same work, the purchaser giving his note for the amount, which was left with one of the four, with the understanding that, when paid, each of said persons should receive $100, the note being subsequently paid to the party holding it, — *Held*, in an action brought by him against one of the parties to this agreement, for goods sold, etc., that the $100 retained by him from the proceeds of said note was not a good subject of counterclaim, it being necessary, in order to sustain such claim, to enforce a partnership or joint agreement entered into for the attainment of objects illegal and contrary to the statutes of the State (Sess. Laws, 1854, chap. 329), which requires that any proposal for work shall contain the names of all parties interested therein, and prohibits any secret arrangement that any person not named, or any engineer in the employ of the State, shall be interested therein, etc.

(Argued December 19, 1870; decided January 24, 1871.)

APPEAL from a judgment of the General Term in the fifth judicial district, affirming a judgment of the Oneida Special Term, allowing a counter claim to the defendant of $100. The trial was before Justice MORGAN without a jury.

The facts in this case sufficiently appear in the opinion of the court.

*G. F. Bicknell*, for the appellant, that an express promise can only revive a precedent *good consideration*. (3 Bos. & Pull., note, 249 ; *Smith* v. *Ware*, 13 Johns., 258.) That a penalty implies a prohibition. (1 Kent. 9th ed., 525 ; *Griffith* v. *Wells*, 3 Denio, 226 ; Plowden, 206, g ; 7 Wend., 31.) Also citing, on the general question of invalidity of the contract, 3 Vesey, 363 ; 1 Bos. & Pull., 234 ; 7 Term, 63 ; 7 Vesey, 470 ; 3 East, 222 ; 2 Bos. & Pull., 37 ; 7 Taunt., 246 ; 3 Barn. & Ald., 179 ; 3 Mees. & Welsby, 434 ; 2 Barn. & Cr., 473 ; 10 Bing., 110 ; 3 My. & K., 44, 104 ; 6 Cow., 431 ; 3 Cai., 213 ; 9 Johns., 295 ; 2 Hall, 266 ; 4 Comst., 449 ; 1 McQ., 392 ; 16 Johnson, 438 ; 5 B. & C., 108 ; 4 Esp., 14 ; 5 Ex., 882 ; 1 Ball & C., 360 ; 15 Johns, 380, 381.; 4 N. Y., 144, 145 ; 3 N. Y. Stat. at Large, 163 ; 10 Bos., 309 ; 4 Keyes, 208 ; 39 Barb., 141 ; 31 id., 295 ; 17 How. U. S., 222.

*Charles Mason*, for the respondent, cited *Tenant* v. *Elliott* (1 Bos. & Pull., 3) ; Id., 296 ; 5 Bosw., 649 ; 53 Barb., 361 ; 39 id., 141 ; 31 id., 295 ; 11 Wheaton, 258 ; 3 Term, 418 ; Faikey & Kenons 4 Burr, 20, 69.

CHURCH, Ch. J. The point in this case is, whether the court below erred in allowing to the defendant the sum of $100 as an offset. The facts are substantially as follows : The plaintiff, defendant, Stephens and Truesdell, made an agreement in the nature of a copartnership, to propose or bid for public work on the Seneca river improvement. The bid was to be put in in the name of the plaintiff alone, the defendant and Stephens to become sureties. Truesdell was at the time an engineer in the employ of the State on the canals. The bid was made in the name of the plaintiff, in accordance with the arrangement. Before the work was awarded, the said parties made an agreement with one Haroun, to withdraw their claim to the work, and sell their bid to him for $400 (he being a higher bidder for the same work), which was consummated, and he gave his note for the amount. It was then arranged that the note should be left with the plaintiff for collection, and that when collected each

of said persons should be entitled to $100. The plaintiff collected the note, paid to Stephens and Truesdell each $100, and promised to pay the defendant, and apply it on their deal, but never did. It is claimed that it cannot be allowed, on account of the illegality of the transaction · out of which it arose. To enable the court to apply correct legal principles, it is necessary to analyze the transaction and ascertain its true nature and character.

The original arrangement for a joint interest or copartnership was illegal, and contrary to a positive statute in two respects. The laws of 1854, chapter 329, in substance requires, that every proposal for work shall contain the names of all persons who are interested, and prohibits any secret agreement or understanding, that any person not named shall become interested in any contract that may be made, and engineers, and all other persons in the employ of the State on the canals, are also prohibited · from becoming interested in any contract or job on the public works.

In the next place, the transaction with Haroun was contrary to public policy, and illegal. It is manifest that · the object and purpose of the purchase of the bid,· was to have it withdrawn so as to enable Haroun to take the contract upon a higher bid. This was directly against the interests of the State, and tended to destroy that honest competition which public bidding is designed to secure ;· and when, as in this case, it was done partly for the benefit of an officer of the State, whose duty it was to protect its interests, it was not only contrary to public policy, but was grossly corrupt.

The Supreme Court placed its decision in favor of the defendant, upon the ground that as between these parties, the illegal contract had been fully executed when Haroun paid the money, and that the plaintiff then became a mere depositary, and held the money for the use of the other parties.

It is undoubtedly true that, if the contract or obligation does not depend upon nor require the enforcement of the unexecuted provisions of the illegal contract, it will be carried

out. It has been laid down as a test, that whether a demand connected with an illegal transaction is capable of being enforced at law depends upon whether the party requires any aid from the illegal transaction to establish the case. (Chitty on Con., 657.) So it has been settled that a party who pays money to a third person for the use of another, which, on account of the illegality of the transaction, he was not obliged to pay, such third person cannot interpose the defence of illegality. (*Tenant* v. *Elliott*, 1 Bos. & Pull., 3; *Merritt* v. *Millard*, 4 Keyes, 208.) This principle is based upon the undoubted right of a person to waive the illegality, and pay the money; and that when once paid, either to the other party directly or to a third person for his use, it cannot be recalled; and that the third person, who was in no way connected with the original transaction, cannot avail himself of a defence which his principal saw fit to waive.

If the only illegal transaction was the contract with Haroun for the sale of the bid, these principles might be applicable, and would probably constitute a good answer to the objection to this counter claim. The payment of the money by Haroun completed that contract, and nothing remained unexecuted. But here the original partnership was illegal; not because of its purposes and objects, but its composition was prohibited by law. If a lawful firm should receive funds from an illegal traffic or business, it may be that the illegality would be regarded at an end, and a division of the money enforced by virtue of the rights of the members under the contract of partnership. This is the utmost limit to which the rule can be carried. (2 Wal., 70.)

In such a case the obligation to divide would not arise out of the illegal purposes of the firm, nor would the division carry out any of those purposes, but the obligation would arise out of the contract of partnership itself. Here this contract was illegal. The object of the statute was to enable the State officers to know with whom they contracted, and also to see that the statute, prohibiting engineers and other canal officers from becoming interested, was not violated, and

to prevent all secret combinations in relation to obtaining work. The money obtained by this bid belongs to the firm; and the plaintiff could have been compelled to divide, if the firm had been lawful, by force of the contract organizing it. In this case he also agreed to pay the money, and defendant asks the court to compel him to perform this obligation. The answer to it is obvious. There is no obligation, because it was incurred contrary to law. It rests upon the contract of partnership, and that is void for illegality.

In law there was no partnership, and none of the parties obtained any rights under the contract creating it. (*Armstrong* v. *Lewis*, 3 Mylne & Keen, 45.)

The sentiment of "honor among thieves" cannot be enforced in courts of justice. Suppose the engineer had sued for his share after an express promise, would any court have tolerated his claim for a moment in the face of a statute prohibiting him from being interested? If not, in what respect does the defendant occupy any better position? The first step in his case is to prove that he was a secret partner and entitled to a share of this money. The law prohibits secret partners, and he is, therefore, not a partner.

The express promise does not aid the defendant, because the promise was only to carry out the unexecuted provision of the contract of partnership to divide the money. The two cases cited by the counsel for the defendant, if they are to be regarded as good law, are distinguishable from this. In the case of *Faikney* v. *Renois* (4 Burr, 2069), one of two partners had paid £3,000 to settle differences in illegal stock jobbing operations, and the defendant executed his bond to secure the share of the other partner. The court overruled the defence recognizing the exploded distinction between acts *malum prohibitum* and *malum in se*, and held that as between those parties the bond was to secure the plaintiff for money paid, and the purposes of the payment would not be inquired into. A similar decision was made upon the authority of this case in *Petrie* v. *Hannay* (3 Term, 418), Lord KENYON dissenting. The distinction between the above

cases and this is in the circumstance that there the illegal transactions had been closed up and settled, and the obligations sought to be enforced were for the money advanced for that purpose. Here it is sought to consummate the illegal contract by a new agreement, that it shall be performed. No case has gone this length, and the two cases above cited have been very much shaken by subsequent decisions, and are, to say the least, questionable authority, especially the latter. (*Aubert* v. *Maze*, 2 Bos. & Pull., 370; *Mitchell* v. *Cockburne*, 2 H. Blackstone R., 380; *Ex parte Daniels*, 14 Ves., 190; *Lowry* v. *Bourdieu*, Douglas R., 467; *Brown* v. *Turner*, 7 Term, 626; *Belden* v. *Pitkin*, 2 Caines R., 147, note *a.*)

The general rule on this subject is laid down in this court, in *Gray* v. *Hook* (4 Comst. R., 449), by MULLETT, J., as follows: " The distinction between a void and valid new contract in relation to the subject-matter of a former illegal one depends upon the fact whether the new contract seeks to carry out or enforce any of the unexecuted provisions of the former contract, or whether it is based upon a moral obligation growing out of the execution of an agreement which could not be enforced by law, and upon the performance of which the law will raise no implied promise. In the first class of cases, no change in the form of a contract, will avoid the illegality of the first consideration, while express promises based upon the last class of considerations may be sustained."

It is sometimes difficult to apply general rules to particular cases, but this case comes clearly within the first class mentioned in the above rule. It is not from any regard to the rights of the party setting up this defence that courts refuse to enforce illegal contracts, but it is for the protection of the public. The plaintiff in this case is entitled to no sympathy or favorable consideration. He must have made an affidavit that no other person was interested with him in the proposal, and when he received this money, as between him and the defendant, the latter was entitled to it; and while we have no disposition to justify his conduct, his position enables him to

Statement of case.

secure the advantage of a decision which we are compelled to make in obedience to a principle of public policy which is indispensable for the protection of the community against the corrupting influences of illegal transactions.

The observation of Lord MANSFIELD in *Holman* v. *Johnson* (1 Cowper, 343), is applicable here. He said: "The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant (in this case the plaintiff). It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say."

Judgment must be reversed and a new trial ordered, costs to abide the event.

All the judges concurring.

Judgment reversed and a new trial ordered.