ARNOT v. PITTSTON AND ELMIRA COAL COMPANY.

*Contract—illegal contract—when illegal part of contract severable—recovery for goods delivered under—when parties not in pari delicto—Agency— authority to make illegal contract not presumed.*

A contract was made on behalf of the B. company and the P. company, two corporations, whereby the B. company agreed to sell and deliver to the P. company, during a season, coal at the market price, which the P. company agreed to pay. A separate article of the contract contained a provision that the vendor should not, during the season, sell coal to any other party to go north of the Pennsylvania line. *Held*, that if the provision was illegal a sufficient consideration for the contract remained after its rejection, and the vendor was entitled to maintain an action for the coal delivered.

The contract, soon after it was made and before it was completed, was rescinded by the vendor, who brought the action for the value of the coal delivered. *Held*, that the parties were not in *pari delicto*, and the vendor could maintain the action.

The contract was made on the part of the B. company by an agent, and on the part of the P. company by its president. The B. company did not ratify but disaffirmed the contract when it came to its knowledge. *Held*, that for that reason also the parties were not in *pari delicto*. The right of an agent to enter into an illegal contract will not ordinarily be presumed, and the contract is not obligatory on the principal, and he may disaffirm it.

APPEAL by defendant from a judgment in favor of plaintiff entered upon the report of a referee.

The action was brought in Chemung county by John Arnot, Jr., against The Pittston and Elmira Coal Company to recover the value of certain coal sold and delivered to defendant by plaintiff's

assignor, the Butler Colliery Company. Said assignor and defendant were both corporations, organized under the laws of the State of Pennsylvania, for the business of mining and vending coal. On the 3d of August, 1869, an agreement in writing was entered into on behalf of said corporations, whereby it was agreed that the defendant, which had a coal depot at Elmira, N. Y., should take all the coal the Butler Colliery Company was desirous to send north of the Pennsylvania State line, not exceeding 2,000 tons a month at the regular market price established from time to time by the Wyoming Coal Exchange, less 15 per cent commission to be allowed by the Butler Coal Company. The agreement was to take effect immediately and last through the season of 1869.

The ninth and last clause of the agreement was as follows:

"The said party of the first part" (The Butler Colliery Company) "hereby agrees not to sell coal to any other party than the said party of the second part to come north of the State line during the continuance of this agreement."

The agreement was signed as follows:

"Butler Colliery Company by S. H. Brown, agent.

"The Pittston and Elmira Coal Company by E. N. Frisbie, President."

The object of the defendant in making the agreement was to control the Elmira coal market, and prevent a competition with defendant in the sale of coal therein. Between the time of making the agreement and the 28th of August, 1869, a large quantity of coal was delivered by the Butler Coal Company to defendant. About the 28th of August the said company gave notice to defendant that it would deliver no more coal under the contract, and did rescind the contract, and there was no more coal delivered, and during the fall of 1869 the Butler Coal Company sold and delivered coal north of the Pennsylvania State line.

The claim upon which this action was founded was for the coal delivered during the month of August. There was no evidence that Brown, the agent of the Butler Coal Company, had authority to make the contract in question, or that the company knew of its provisions except as appears above. Other facts appear in the opinion.

*H. Boardman Smith*, for appellants.

*John Murdoch*, for respondents.

MILLER, P. J. I shall assume, for the purposes of this case, that the ninth paragraph of the contract between the Butler Colliery Company and the Pittston and Elmira Coal Company, which is as follows:

" Ninth. The said party of the first part hereby agrees not to sell coal to any other party than the said party of the second part to come north of the State line during the continuance of this agreement," was illegal and void. Taking this view of the subject the question arises whether the contract is divisible, and embracing some provisions which are valid standing alone, and there being an adequate independent consideration, the defendant's agreement can be supported, and the court can disregard the bad and sustain the agreement upon the good consideration. I am inclined to the opinion that this can be done. It is laid down by Parsons in his work on contracts, volume 1, page 457: " If one gives a good and valid consideration, and thereupon promises to do two things, one legal, the other illegal, he shall be held to do that which is legal, unless the two are so mingled and bound together that they cannot be separated, in which case the whole promise is void." See also note, where the same principle is substantially maintained. *Leavitt* v. *Palmer*, 3 N. Y. 37, and the authorities cited. On the same page of the work mentioned, it is further stated in a note that " although•a contract contain some provisions or promises which are void by statute, yet if it also embrace other agreements which would be valid if standing alone, they may be enforced;" and numerous English cases are cited to uphold this principle. Although there are perhaps some cases seemingly in conflict with these general rules stated, I am not satisfied that they are of a character which overthrows the principle referred to in the authorities cited.

In support of the position contended for by the plaintiff's counsel, is the case of *Jarvis* v. *Peck*, 10 Paige, 119, which I do not understand has ever been distinctly overruled. The case of *Saratoga County Bank* v. *King*, 44 N. Y. 87, does not so hold, and is not, I think, in conflict with the rules laid down; for in this case the action was brought to enforce an illegal agreement, while here it is in disaffirmance of it. The same remark applies to *Woodworth* v. *Bennett*, 43 N. Y. 273. The elementary principle is sustained in numerous cases, that where the contract is divisible and the illegal part may be separated from the legal, the contract

may be enforced.   *Leavitt* v. *Palmer*, 3 N. Y. 37; *Arthur* v. *Arthur*, 5 Barb. 10; *Vanderpoel* v. *Van Allen*, id. 161; *Pepper* v. *Haight*, 20 id. 440; *Hawley* v. *Truax*, 21 id. 361; *Cook* v. *Eaton*, 16 id. 440; *Sanderson* v. *Goodrich*, 46 id. 618; *Curtis* v. *Leavitt*, 15 N. Y. 12.

In *Alcock* v. *Giberton*, 5 Duer, 76, the rule was laid down by the Assistant Vice-Chancellor HOFFMAN to be, "that if a sufficient valuable consideration remained after rejecting the illegal one to support the contract, the court would enforce it." It is very evident that such consideration does exist in the case at bar to support the plaintiff's claim, and the action may therefore be maintained within this rule.

The intention of the parties is also to be considered as appears from the instrument itself upon the question whether a particular provision in the agreement is dependent or independent. Even when a defendant has received a substantial part of the consideration of the covenant, which is being enforced against him and the covenants and consideration in their nature cannot be apportioned, then also they are to be considered as independent. *Evans* v. *Harris*, 19 Barb. 423. As to the question of intention, it will be seen that the vendors only obtained the market price for their coal, and the vendees only paid such price. It is hardly to be presumed that either of the parties under such circumstances were influenced by any other provision except the price. We must construe the agreement as it reads independent of the opinion of any of the parties or their agents which was given in evidence on the trial, and which, perhaps, may have been an afterthought, and, therefore, should have no weight. The construction stated, it seems to me, is supported by the instrument itself, and it is not the province of courts to strain a point so as to include an illegal consideration, and by conjecture and speculation defeat the actual designs of a party.

These views are sufficient to dispose of the case, but independent of them I am of the opinion that there is no principle of law which interferes with the right of the plaintiffs to maintain an action for the value of the coal sold and delivered to the defendant. It appeared, and the referee has found that soon after the agreement was made it was rescinded and disaffirmed by the plaintiff's assignor. The action was not brought to enforce the agreement, but in disaffirmance of it and the contract was executory, and was not fully executed. Although both parties had participated in it, they were not in "*pari delicto*," where neither can recover from

the other. The contract being executory, the plaintiff had a right to rescind, and bring its action to recover the value of the coal delivered. There is a wider distinction between an action brought for the affirmance of an illegal contract, and to enforce its performance, and an action which is prosecuted in disaffirmance of a contract on the ground that it is void, and that the defendant is not entitled to the benefit to be derived from an unlawful act. *Morgan* v. *Groff*, 4 Barb. 524, 527; *Schemerhorn* v. *Talman*, 14 N. Y. 123; *Curtiss* v. *Leavitt*, 15 id. 12. There is no finding of the referee that the plaintiffs were in "*pari delicto*," and inasmuch as the plaintiff's assignor sought to revoke and recede from the contract, I think they cannot be considered as liable to the charge of being equally in fault with the defendant.

It may also be observed that the contract in question was made by an agent of the plaintiff's assignor, and by the president of the defendant, and if they were both in "*pari delicto*" the Butler Colliery Company, whom the agent represented, when it came to its knowledge had a right to rescind and disaffirm it, and actually did so disaffirm the contract. As it did not ratify it, a right of action accrued to the Butler Colliery Company, which the plaintiff as their assignor is entitled to maintain. *Condit* v. *Baldwin*, 21 N. Y. 219 ; *Bell* v. *Day*, 32 id. 165; *Algur* v. *Gardner*, 54 id. 360; *Clark* v. *Metropolitan Bank*, 3 Duer, 241. The authority of an agent to enter into a contract which is illegal is not to be presumed ordinarily ; nor is it obligatory upon the principal, and the latter has a right to disapprove of and disaffirm it. There is evidence showing that the principal, the Butler Colliery Company, was not acquainted with the terms of the contract when made, and upon ascertaining what it was, repudiated and disaffirmed it. It could do no more, and was entitled by that act to recover for the value of the coal delivered.

These views dispose of all the questions which it is material to discuss, and of the entire case. The judgment was right and must be affirmed, with costs.

*Judgment affirmed.*