McGowk, J. (dissenting).
—That the contract entered into between the parties, was one known and recognized in law as a contract in violation of public policy, if not conceded herein, seems to me to be too clear to require the citation of any authorities.
In Parsons on Contracts, (7th ed.), vol. 1, 74, it is stated that “There are certain contracts spoken of in English books, as “Marriage brokage, or brokage contracts.”
. They are contracts for payment of money, or some other compensation, for the procuring a marriage; and they are held to be void both in law and equity as against policy and morality.”
It is not claimed that any' deceit, fraud, false pretenses, or misrepresentations, were made by the defendant, to induce Mrs Guión to deposit with him the sum of fifty dol *413 lars sued for; nor does it appear, nor is it claimed, that she was ignorant of the position she assumed in entering into the contract, or of the illegality thereof, and she thus was with the defendant in pari delicto.
Such being the case, she must not complain, if what she may consider a harsh application of the law is applied.
In Crawford v. Russell (62 Barb., 92) Judge Potter in his opinion at page 100, says, “If then we are right, that the doctrine is well establised, that such agreements (referring to marriage, brokage contracts) are void as against public policy; all advances of money and services performed, must fah with the agreement itself.”
The consideration of all contracts must be legal, and all those which contravene a general policy of the common law and the provisions of any statute are void; and courts will neither aid the parties to enforce them, nor, if executed, afford relief, by restoring the parties to the condition before performance, and the courts will not aid either party in enforcing an illegal executory contract; nor, if executed, will they aid either party in setting it aside or in recovering back what has passed under it. Nellis v. Clark, 4 Hill, 424.
In this case Chancellor Walworth, in his opinion, says: “Where both parties are equally offenders against the laws of the country or the general principle of public policy, or the laws of decency or morality, portior est conditio defendentes; not because the defendant is more favored where both are equally criminals, but because the plaintiff is not permitted to approach the altar of justice with unclean hands.
In the case at bar, the defendant agreed to pay back fifty dollars deposited with him upon a certain contingency set forth in his due bill or agreement. The payment of the fifty dollars remained unexecutory, and the court will not compel the contractor to perform his engagements. See Nellis v. Clark, above cited.
Courts of justice are not required, in any way to aid the enforcement of an illegal contract, or to lend their assistance, in any respect, to an illegal transaction.
The parties being in pari delicto, the courts will leave them where they find them, and not attempt to balance equities; their action is controlled by a principal, having no respect to the equities between the parties, but rests upon the solid and broad foundation of a wise and prudential governmental policy. See Rose & Hawley v. Truax, 21 Barb., 361; Schermerhorn v. Talman, 14 N. Y., 94, 102, 141; Tracy v. Talmage, 14 id., 162, 181; Pratt and others v. Adams, 7 Paige, 615; Barton and others v. The Port Jackson and Union Falls Plank R. Co., 17 Barb., 397.
Money paid upon an illegal contract, both parties being *414 in pan delicto, cannot be recovered back again. Burt v. Place, 6 Cowen, 431.
Nor can money be recovered back which has been paid in part performance of an illegal contract, the parties being in pari delicto. Knowlton v. The Congress and Empire Spring Co., 57 N. Y., 518.
It is only where an illegal contract has been fully executed and money paid thereunder remains in the hands of a mere depositor, who holds the money for the use of one-of the parties to the contract, that an action brought to recover the money so held will be sustained. Woodworth v. Bennett, 43 N. Y., 273.
Contracts illegal at common law as being contrary to public policy are such as injuriously affect or subvert-the public interest, such contracts as by their terms or contemplated manners of performance must work some mischief affecting a body politic.
All contracts or agreements which have for their object-anything which is either repugnant to justice or in violation of religion, or public decency or order.
The cases where the doctrine of public policy has been applied most commonly, are in respect to contracts made-in restraint of trade, of marriage, those which affect injurr ously the legislation or administration of justice of the state, wager contracts, and contracts affecting the public morals.
The adjudications in this class of cases proceed on the grounds of some public injury, which the performance of the stipulations of the parties would be likely to produce. The aid of the law is not withdrawn from any consideration of the rights or equities of the parties, as between, themselves, but solely to prevent an infringement of the public law or policy of the state. Sedgwick v. Stanton, 14 N. Y., 289.
In all cases where a recovery has been allowed for money paid or deposited on an illegal contract, such recovery has-been authorized by statute laws.
It has always been the policy of the courts to frown upon and discountenance contracts like the one in question; and the courts have always refused to lend their aid, either /it law or in equity, in relieving either of the parties from the effect thereof, or to assist them in recovering-back money paid thereunder; and it has always been their policy to leave the parties in the position in which they have voluntarily placed themselves, as a penalty • for their illegal acts.
I do not find in the briefs submitted herein any case cited wherein the courts of this state have allowed-a recovery of money paid, or deposited under a marriage brokage *415 contract, or under any illegal contract, except in cases where the statute law has provided for such recovery; nor have I been able to find any case reported, wherein the courts have departed from the policy above mentioned, and to allow a recovery herein would, it seems to me, be establishing a dangerous precedent, and would encourage the making of such contracts, should a party thereto, who had paid or deposited money, and who might feel aggrieved and disappointed because the results of such contract did not come up to his expectations, find that the only risk he incurred would be possibly a loss of time and services, while the money he had invested therein would not be jeopardized, but could be recovered back.
A new trial should not be granted, and I dissent from the decision of a majority of the court reversing the judgment.