(38 App. Div. 7.)

BAIRD v. SHEEHAN et al.

(Supreme Court, Appellate Division, First Department. February 17, 1899.)

1. CONTRACTS—FINDING OF REFEREE.
    To prove that plaintiff, furnishing granite blocks to a paving contractor, was to receive his pay in municipal bonds each month, instead of cash, defendant testified that he told plaintiff payment was to be made in bonds, as it was to another person furnishing blocks. The contract of the latter showed he was to get cash. Defendant never tendered the bonds monthly. In fact, it appeared he did not have them to pay with, in such manner. The evidence was otherwise in close conflict. *Held* to justify the referee's finding that the blocks were not to be paid for in bonds.

2. SAME—PUBLIC POLICY.
    Bids for a public improvement having been thrown out, one bidder agreed to permit another to underbid him on condition that the latter would purchase his material at a specified price. *Held* that, part of the material being refused, the executory portion of the contract would not be enforced, being void as against public policy.

3. SAME—REFUSAL TO ENFORCE.
    Where a contract is void as against public policy, the court will refuse to enforce it, though such objection was not raised against it.

Appeal from judgment on report of referee.

Action by Matthew Baird against John C. Sheehan and John O'Brien. From a judgment for plaintiff, and an order granting an extra allowance, defendants appeal. Modified.

The plaintiff seeks to determine controversies arising in the execution of an unwritten contract by which he was to furnish the defendants with granite

paving blocks. The complaint states four causes of action: (1) To recover for the delivery of 114,688 blocks of granite made in June and July, 1895, of 161,068 blocks in August, 231,849 in September, and 42,733 in October, at $65 per 1,000, payable in monthly bills, amounting in all to $35,532.19, with interest from the several dates the amounts were due; (2) to recover $1,279.38, for services rendered in carting 255,975 blocks, at $5 per 1,000; (3) to recover $5,250 damages for defendants' breach of contract in refusing to accept more than 550,000 of 900,000 blocks contracted for; (4) to recover $1,985.98 damages for defendants' failure to pay claims for demurrage, additional freight, and for removing obstructions on the wharf. The complaint admits payment of $10,000, and allows credits for wharfage, reducing the total amount to $34,085.05, and demands judgment therefor, with interest from the several dates. The answer admits that the granite blocks were furnished as claimed, at $65 per 1,000; but denies that there was to be monthly payment in cash, claiming that payment on the whole contract was to be made in Long Island City bonds; admits the carting of 255,975 blocks, but alleges that $4.50 per 1,000, instead of $5, was the price agreed upon for such service; denies any breach of contract, stating that the number of blocks contracted for was not 900,000, but 500,000; denies liability for demurrage or other claims; and, by counterclaim, alleges certain payments made by transfer of Long Island City bonds, and that the quality of a portion of the blocks furnished was not as stipulated. On this latter claim no proof was presented on the trial; but, as to the former, a credit of $22,906.92 was allowed the defendants, the proceeds of bonds sold by them for the plaintiff's benefit. The referee found that the defendants had agreed to make monthly payments in cash, and not in bonds, that $5 was the price accepted for carting; that 900,000 blocks had been contracted for,—and gave judgment to the plaintiff on the three causes of action, taking for measure of damages on the question of breach of contract the difference between $65 per 1,000, the contract price, and $57, the highest market price. On the fourth cause of action, the referee held that the contract called for delivery on the wharf, and no demurrage was chargeable, but found that the plaintiff had a claim of $244.18 for removing obstructions on the wharf, at the request of the defendants, which, with interest, amounted to $282.99. Crediting the defendants with money paid and the proceeds of the sale of certain bonds which the plaintiff had received, the referee decided that the amount still due the plaintiff was $9,149.51, with the costs of the action. Motion was thereafter made to the court for extra allowance, which was granted, the sum being fixed at $800, and judgment was entered for $10,350.98. After filing proper exceptions, the defendants appealed from the judgment, and from the order granting extra allowance.

· Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Edward Browne, for appellants.

J. Woolsey Shepard, for respondent.

O'BRIEN, J. The appellants contest the several causes of action as they did on the trial before the referee, and on this appeal insist that his conclusions in favor of the plaintiff were against the weight of evidence. To determine whether or not this view can be sustained requires an examination of the entire record; and, although to detail the evidence at length would exceed the limits of an opinion, we may, by way of summary, reach a conclusion as to the force of the appellants' contention.

For a first cause of action, the plaintiff alleged that he was entitled to receive monthly payments in cash for the stone delivered. The times of payment were not seriously disputed, for Mr. O'Brien, one of the defendants, who was the person chiefly engaged in mak-

ing the contract with the plaintiff, testified, "We were to pay once a month." What was really disputed was the manner of payment, —whether it should be in cash, as the plaintiff stated, or in bonds of Long Island City, as claimed by the defendants. On this point there was a conflict of evidence, and the referee, in his conclusion, no doubt took into consideration an apparent inconsistency which arose in the testimony of Mr. O'Brien, who said that he had informed the plaintiff that payment was to be made in bonds, the same as a Mr. Pierce, agent for the New York & Maine Granite Paving-Block Company, was receiving from the defendants on a similar contract, for the delivery of blocks of stone to be used on Steinway avenue and Broadway. That contract, in writing, was produced, and therein no provision was found for payments in bonds, but, on the contrary, it appeared that payment was to be in cash. Upon a closely-contested question of fact, this circumstance must have had considerable weight with the referee, as would also the fact that it in no way appears that the defendants even tendered, monthly, bonds of Long Island City in payment of the stone delivered. And it seems that, if their possession of Long Island City bonds was dependent on what they received on their contract for city work for which the plaintiff was furnishing them paving stone, they could not have made monthly payments, because it is not shown that they received the bonds at such times or in such amounts, but, on the other hand, it appears that, although some bonds were given after part of the work was done, the larger amount was not transferred to them till December, before which time the plaintiff had delivered all the stone which they would accept. We think, therefore, that the counsel for the appellants is too broad in his statement that the evidence adduced on the trial admits of but one conclusion, namely, that the plaintiff "agreed to receive bonds for such delivery under the contract with the defendants." Upon this, as upon all the issues raised at the trial, there was a direct conflict of testimony, and the referee had to determine the credibility to be given the witnesses, and the character of the proof presented by the respective parties. We do not wish to be understood as saying that there were not some inconsistencies and improbabilities in the plaintiff's version of the various conversations and transactions which he had with the defendants; but these had to be considered with the other evidence; and, in regard to all the issues thus raised, we can say that the questions were clearly those of fact, dependent for their solution on the credence which the referee gave to the testimony. Thus, with respect to whether $5 or $4.50 per 1,000 was to be paid for cartage, whether demurrage should be allowed the plaintiff, and whether the defendants should bear the expense of moving some stone from the front to the rear of the dock, there was conflicting evidence, and the conclusion to be reached very largely depended upon seeing the witnesses, their manner of testifying, and the extent to which they were corroborated by other facts or circumstances. In such cases, as has frequently been stated, the trial judge or referee is better enabled to pass upon the questions of fact than can be an appellate court.

In Baird v. Mayor, etc., 96 N. Y. 567, 577, it was said:

"A proper regard for the advantages possessed by that [trial] court in the disposition of questions affecting the credibility of witnesses, and those depending upon the weight and authority of conflicting evidence, requires great consideration to be accorded to its opinions. * * * When there is evidence on both sides, and the case is balanced, and the mind of the court has been called upon to weigh conflicting statements and inferences, and decide upon the credibility of opposing witnesses, much weight must be accorded to the special adaptation of the trial court to investigate and determine such questions."

And as expressed in Westerlo v. De Witt, 36 N. Y. 340, 345:

"If, upon reading the evidence, this court should be of the opinion that the conclusion might have been either way, then the fact that the referee saw the witnesses, heard them testify, and had the nameless opportunities of judging of their character that personal acquaintance can only give, should induce us to defer to his judgment."

As has also been pointed out, on an appeal consisting principally of questions of fact, "it is not the same question as if we inquired whether we should have found the same facts in the same way as did the referee. It is rather, are we so certain that the referee was in error, upon the facts, as that we will assume to reverse his judgment?" Crane v. Baudouine, 55 N. Y. 256–264.

In a case, therefore, wherein it is not evident to us that the conclusions of the referee are unsupported by evidence, or are "against the weight of evidence," we would not be justified in disturbing his report. This fundamental principle is clearly and abundantly established. It was held in Hoar v. McNeice, 1 App. Div. 549, 37 N. Y. Supp. 433, that, where there is conflict of evidence, the findings of the referee upon the questions will be approved when there is no preponderance of proof against them; in Shailer v. Corbett (Sup.) 15 N. Y. Supp. 875, that, where there is a direct conflict in the evidence, the appellate court should not interfere with the judgment entered upon the report of the referee; in Bank v. Van Antwerp (Sup.) 4 N. Y. Supp. 364: "Findings of fact by the court are not to be disturbed on appeal unless unsupported by or clearly against the weight of evidence;" and in the recent case of Stokes v. Stokes, 155 N. Y. 590, 50 N. E. 345: "In reviewing the judgment in the first case, the general term was not justified in reversing it, unless it appeared that the proof so clearly preponderated in favor of a conclusion adverse to that reached by the trial court that it could be said with reasonable certainty that it erred in its conclusion."

In the third cause of action, however, in which the referee found the defendants liable for the sum of $3,188.90, for breach of contract in failing to receive the full 900,000 blocks of stone, there are, in addition to questions of fact, two points of law: One relating to the statute of frauds, it being insisted that the contract was void to the extent, at least, of the portion which remained executory, for the reason that the contract sued upon was not in writing, and, as the defendants allege, was not to be completed within a year from the making thereof, and called for a sum greater than $50; the other question of law is whether the referee should have allowed a recovery for breach of a contract, which, as made, was against public

policy. As we regard this latter point fatal to the plaintiff's claim for damages, it will be unnecessary to discuss the statute of frauds.

The referee correctly states in his opinion with reference to the testimony of the plaintiff as to how the contract was made:

"It developed that the whole subject-matter of the contract was completed, and both he and Mr. O'Brien agreed to a proposal made by Mr. O'Brien to the plaintiff at Long Island City, some two weeks before the interview between plaintiff and O'Brien, at defendants' office. It appears that plaintiff had been a bidder for the same work of paving Broadway; that the bids were to be thrown out and readvertised. Mr. O'Brien said to plaintiff, 'I don't want you to interfere with me on this contract.' Plaintiff stated he was going to interfere, because he had the blocks, and wanted to use them; and O'Brien replied: 'Now I will tell you what we will do. If you bid on this work, and bid the same price as you did the last time, that will enable me to get the contract; and I will take what blocks you have on hand for $70 per thousand, and put them on this bid.' Plaintiff put in the same bid as he did before, got a check for $5,000 certified, and O'Brien beat him in it, and got the contract. The arrangement was made at defendants' office, and thereafter the price was reduced to $65 per thousand."

And, as the referee also says, "this testimony is not contradicted." It appears, therefore, that, where competitive bids were asked for, the plaintiff, in consideration of the contract for the delivery of a quantity of stone, agreed to, and subsequently did, put in a bid such as would enable the defendants to obtain the contract. Such a transaction is void as against public policy. The rule as to such contracts has been definitely stated.

In Sherburne v. Taft (Sup.) 20 N. Y. Supp. 757, affirmed (N. Y. App.) 36 N. E. 819, an action for an accounting, where, to induce a breach of trust, an agreement had been made to share in the profits arising thereby, the trial judge, in dismissing the complaint, said:

"Upon its appearing * * * that the agreement * * * was an illegal agreement, * * * the law will not aid any of the parties, * * * but leave the parties where it finds them. * * * The principle on which courts of justice have refused to enforce contracts of this kind is, not to aid either of the parties to the action in escaping from the effects of contracts made by them, but on the ground of public policy."

In affirming this dismissal, the court of appeals said:

"The evidence and finding of the court show a gross violation of one of the most firmly established principles of law on the part of the two defendants who were trustees; * * * and they also show that the fruits of such violation were received and partaken of by the other defendant, and by the plaintiff, with the full knowledge of the illegal and corrupt character of the whole transaction."

In Woodworth v. Bennett, 43 N. Y. 273, four persons (one of them a state engineer) made an agreement to bid for certain public work, all to be interested in the bid, and, before the work was awarded, agreed to, and did, withdraw the claim to the work, and sold their bid for $400, to a party who was a higher bidder for the same work, the purchaser giving his note for the amount, with the understanding that, when the note was paid, each of said persons should receive $100. The court held that the agreement was entered into for the attainment of objects illegal and contrary to the statutes of the state (Sess. Laws 1854, c. 329), which require that any proposal for work shall contain the names of all parties interested therein, and

prohibit any secret arrangement that any person not named or any engineer in the employ of the state shall be interested. In the words of the court, "the transaction was contrary to public policy, and illegal. It is manifest that the object and purpose of the purchasers of the bid was to have it withdrawn, so as to enable Haroun to take the contract upon a higher bid. This was directly against the interests of the state, and tended to destroy that honest competition which public bidding is designed to secure." And it was further said that the position of the plaintiff "enables him to secure the advantages of a decision which we are compelled to make in obedience to a principle of public policy, which is indispensable for the protection of the community against the corrupt influences of illegal transactions." .

In People v. Stephens, 71 N. Y. 527, an action brought by the attorney general to recover moneys paid by the state, under contracts made in consequence of fraudulent and unlawful combination and conspiracy between the defendants to prevent competition, and to deceive the contracting board into letting contracts for certain sections of the State Canal at excessive prices, it was held that the rule condemning, as unlawful, combinations to prevent biddings at auction sales, is applicable to proposals for government work in response to a call therefor, with a view to a contract with the lowest bidder, and a combination of contractors, under and by which the privilege of bidding for the work is secured by one, without competition, is against public policy, and illegal.

With respect, therefore, to the unexecuted part of this contract as set forth in the third cause of action, there can be no recovery. The attempt here to obtain damages for breach of contract is similar to that made in Goodrich v. Houghton, 134 N. Y. 116, 31 N. E. 516, an action brought on a gambling contract still executory as to the division of the prize money, where it was said:

"The difficulty with the plaintiff's case * * * is that she cannot prove that the defendants ought to pay her any part of the prize money, except by proof of the contract; and * * * the law will not force its execution, but will leave the parties where it finds them."

It is true, as pointed out in People v. Stephens, supra, that:

"Agreements between two or more persons that all but one shall refrain from bidding, and permit that one to become the purchaser, are not necessarily and under all circumstances vicious, and may be entered into for a lawful purpose, and from honest motives, and in such cases may be upheld."

But in the present case a sham bid was made by the plaintiff, and the real intent was to enable the defendant by such means to secure the contract without actual competition. .

Although the point is not raised, it nevertheless becomes the duty of the court to intervene where it appears upon the face of the record that the contract is void as against public policy. As expressed in Robinson v. Navigation Co., 112 N. Y. 315, 19 N. E. 625, "the court may ex mero motu, at any time when its attention is called to the facts, refuse to proceed further, and dismiss the action;" and, as therein pointed out, "there are many cases when the court, hav-

ing jurisdiction over the subject-matter, may proceed against a defendant who voluntarily submits to its decision." Davidsburgh v. Insurance Co., 90 N. Y. 526; Holman v. Johnson, 1 Cowp. 343.

, , We have examined the numerous exceptions taken to the rulings upon evidence bearing upon the other causes of action, but find none of such a character as to warrant a reversal.

We find no reason for disturbing the order of extra allowance of $300, which is therefore affirmed. The judgment, however, should be modified by deducting the damages awarded under the third cause of action, amounting to $3,188.90, and, as so modified, affirmed, without costs to either party on this appeal. All concur.