RIDGELY v. KEENE et al.

(Supreme Court, Appellate Division, Second Department. November 19, 1909.)

1. CONTRACTS (§ 113*)—ILLEGALITY.

A contract whereby plaintiff, who was engaged in the business of writing circular letters giving advice and information to his clients as to the value of securities dealt in on the Stock Exchange, agreed with defendant stock-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

brokers to influence by his letters the purchase by his clients of certain stock in which defendants were interested, was illegal, and no recovery could be had thereon.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 521, 527, 528; Dec. Dig. § 113.*]

2. CONTRACTS (§ 136*)—ILLEGALITY—DIVISIBILITY.

The contract was entire and indivisible, and, being tainted with illegality, no recovery could be had for any work done by plaintiff thereunder, such as newspaper advertising, to secure subscribers to the letters.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 681, 682; Dec. Dig. § 136.*]

Hirschberg, P. J., dissenting.

Appeal from Trial Term, Kings County.

Action by A. N. Ridgely against James R. Keene and others. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendants Talbot J. Taylor & Co. appeal. Reversed, and new trial granted.

See, also, 126 App. Div. 303, 110 N. Y. Supp. 665.

Argued before HIRSCHBERG, P. J., and JENKS, GAYNOR, RICH, and MILLER, JJ.

Robert W. Candler (Russell H. Landale, on the brief), for appellant.
I. R. Oeland, for respondent.

MILLER, J. Courts should refuse to aid the enforcement of contracts like that in suit. The plaintiff alleges in his complaint that for some years prior to the transaction in suit he had "been engaged in the business of writing circular letters, known as 'Ridgely's Financial Forecasts,' in which he gives (sic) advice and information to his clients as to the value of securities dealt in on the New York Stock Exchange; * * * that by furnishing accurate and reliable information and advice, and by protecting the interests of his clients and customers, he had on the 5th day of August, 1902, a clientele of about 1,000 of such customers"; that on or about the 5th day of August, 1902, he entered into an agreement with the defendants whereby he was to influence the purchase of Southern Pacific stock by his customers, and the defendants were to pay him therefor a reasonable compensation; and that, in accordance with said agreement, "he influenced the purchase by his clients and others of said stock to an amount estimated at far in excess of 100,000 shares." The plaintiff's testimony tends to establish the agreement, and the performance of it by him substantially as alleged. He testified to what he agreed to do in the following language:

"I told him (meaning one of the defendants) that I would bull it through my letter; influence my subscribers to buy."

And he sought to show, by letters received by him from his subscribers, that he did influence the purchase of over 100,000 shares. For that service a jury has awarded him a verdict of $3,000, and the defendants appeal from the judgment entered thereon.

The plaintiff, by newspaper advertisements and circular letters, sought to influence people to subscribe for his daily market letter,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

wherein he undertook to furnish them exact and detailed information and to give them impartial and unbiased advice respecting stock market matters, of which he assumed to possess superior knowledge and means of information. His daily letters to subscribers contained the following statement:

"No 'discretionary account' business done; and no connection whatever with any brokerage office."

The defendants were stockbrokers. They were interested in a pool in Southern Pacific stock, and, according to the plaintiff's testimony, they wished to create a rising market for that stock—"to bull it," as the expression is; and the plaintiff has recovered a judgment on a contract to assist them in doing that by inducing the purchase of stock by subscribers to whom he pretended to give unbiased advice.

One's sense of right and wrong is a safe guide as to what constitutes decent, honorable conduct, and it hardly seems necessary to analyze the transaction in suit, or to quote precedent to show that the plaintiff is seeking to recover the fruits of an illegal and immoral contract. The relation between the plaintiff and his subscribers was one of confidence and trust. He calls them his "clients," his "clientele," his "following." He expected them to act upon his advice in the purchase and sale of stock, and, even had there been no express representations made by him, there would have been an implied obligation on his part not to receive pay from third parties for advising them in a particular way. He seeks to excuse his conduct by asserting that the defendants represented, and that he honestly believed, that his subscribers would profit by his advice; but his belief in the soundness of his advice is wholly immaterial. The law takes into account human frailty, and absolutely forbids the assumption of conflicting obligations and duties, and refuses to inquire whether the person assuming inconsistent relations really supposed he was faithful to both. The wisdom of that is well illustrated in this case. It appears that the speculation in which the plaintiff engaged his subscribers was unfortunate. The plaintiff admits that, after he had begun to entertain doubt, he advised his customers to hold their Southern Pacific stock, for the reason that he wished to keep faith with the defendants. He says:

"That was good faith to these defendants Taylor & Company, and Keene in particular. I think it was good faith, or I could keep good faith with them and good faith with my subscribers at the same time."

The law does not suffer one to undertake thus to keep good faith, or to assume duties with which selfish interest may conflict. In a nutshell, the plaintiff has recovered upon a contract to perpetrate a fraud upon his subscribers; for there can be no doubt that what the agreement contemplated and what the plaintiff actually did was a palpable fraud upon them. It was a violation of his implied obligations, as well as of express representations made to them. The contract was illegal, and contrary to good morals; and hence the court refuses him its aid. While it is unnecessary to support maxims of the law by citation of authority, I call attention to the following cases on the subject: Davenport v. Hulme, 11 Misc. Rep. 521, 32 N. Y. Supp. 803; Goodell v. Hurlbut, 5 App. Div. 77, 38 N. Y. Supp. 749; Woodworth v. Ben-

nett, 43 N. Y. 273, 3 Am. Rep. 706; Dutton v. Willner, 52 N. Y. 312; Knowlton v. Congress & Empire Spring Co., 57 N. Y. 518; Unckles v. Colgate, 148 N. Y. 529, 43 N. E. 59; Holcomb v. Weaver, 136 Mass. 265; Forsyth v. Woods, 11 Wall. 484, 20 L. Ed. 207; Higgins v. McCrea, 116 U. S. 671, 6 Sup. Ct. 557, 29 L. Ed. 764.

The respondent relies upon cases which hold that a broker, having no discretion, but employed solely to bring the parties together, may accept commissions from both. It is unnecessary to analyze those cases in detail, for manifestly they have no application, and, indeed, upon examination, it will be found that the reasoning of them makes against, not for, the plaintiff's position. It is immaterial that the defendants may have understood that they were contracting for the plaintiff to perpetrate a fraud upon his customers, because the court does not withhold its aid on their account.

The court did not permit a recovery for services in sending out the daily letters, but only for services and expenses incurred in connection with the newspaper advertisements and the circulars; but the newspaper advertisements, circular letters, and daily confidential letters were parts of a single plan. The advertisements and circulars were designed merely to arouse interest in the confidential letters. The contract was entire and indivisible. It was an agreement to influence the plaintiff's subscribers to purchase stock, and, being tainted with illegality, no recovery whatever can be permitted for any part of the work done pursuant to it. Foley v. Spier, 100 N. Y. 552, 3 N. E. 477.

Judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur, except HIRSCHBERG, P. J., who dissents.