[No. 10699. Department Two. February 13, 1913.]

M. W. LEWER, *Respondent*, v. E. M. CORNELIUS, *Appellant.*[1]

INTOXICATING LIQUORS—CONTRACTS — VALIDITY—PUBLIC POLICY— AIDING IN EVASION OF LAW. Under Rem. & Bal. Code, § 6282, making it unlawful for a brewing company to pay, advance, or loan or become surety for the payment of a retail liquor license, a promissory note by the retailer, payable to a bank, and delivered to a brewing company, which solicited from the bank a loan thereon to pay the retailer's license fee, is void as against public policy and unenforceable, where the bank had notice of the purpose of the loan and made the same on the security of the brewing company with a view of assisting in the evasion of the statute.

CONTRACTS—VALIDITY—PUBLIC POLICY—ENFORCEMENT—OBJECTIONS How RAISED. The courts will refuse to enforce a contract entered into in violation of a statute and against public policy, without regard to the manner in which the illegality is disclosed, and will start an inquiry of its own regardless of the technical accuracy of the pleadings or the admissibility of evidence disclosing the illegality, to the end that neither party be given any aid in illegal proceedings.

STATUTES—TITLES AND SUBJECTS—INTOXICATING LIQUORS. The title to the act of 1909, Rem. & Bal. Code, § 6282, "to prohibit any manufacturer . . . from having any interest . . . in any retail liquor license . . . or to become surety on any liquor dealer's bond . . ." is broad enough to include the provision of the act prohibiting such manufacturer from paying or advancing money or becoming surety for the payment of a retail liquor license.

[1]Reported in 129 Pac. 911.

CONSTITUTIONAL LAW—DUE PROCESS—INTOXICATING LIQUORS—REGULATIONS. Rem. & Bal. Code, § 6282, prohibiting any manufacturer from advancing money to pay or become surety for the payment of any retail liquor license, does not deprive the manufacturers of property without due process of law, regulation of the liquor traffic being within the power of the state.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered April 1, 1912, in favor of the plaintiff, upon sustaining a demurrer to the answer, in an action on promissory notes. Reversed.

*R. G. Hutchinson,* for appellant.

*Happy, Cullen, Lee & Hindman* (*Sydney A. Cryor,* of counsel), for respondent.

FULLERTON, J.—This is an action brought by the respondent against the appellant to recover upon two promissory notes, alleged to have been made and delivered by the appellant to the Exchange National Bank of Spokane and by the bank indorsed to the respondent after maturity. The appellant, for answer to the complaint, set up facts thought to show that the notes were founded on an illegal consideration. To the answer, a general demurrer was interposed, which the trial judge sustained. The appellant thereupon refused to plead further, and judgment was entered against him according to the prayer of the complaint. The ultimate question therefore is, do the facts set forth in the answer show an illegal consideration for the notes.

The material part of the answer is as follows:

"(1)    That the promissory notes referred to in paragraph one of plaintiff's first and second causes of action, were given for an illegal consideration, and in furtherance of an illegal transaction arising as follows:    The Inland Brewing and Malting Company is, and was at all times herein mentioned, a corporation organized and existing under and by virtue of the laws of the state of Washington, and authorized to do business in said state, and in the city of Spokane, is, and was at all of said times, a corporation en-

gaged in the manufacturing and bottling of fermented malt liquors, and was at all of said times engaged in buying, selling and disposing of the same in quantities of five gallons or more in said city of Spokane; that at all of said times, one Charles Theis was, and now is, president of said Inland Brewing and Malting Company, and one William Huntley was at all of said times, and now is, secretary of said brewing company.

"(2)    That the Exchange National Bank of Spokane mentioned as payee in the notes referred to in plaintiff's first and second causes of action herein, is, and was at all of said times, a national bank organized and existing under and by virtue of the laws of the United States of America, and having its principal place of business at Spokane, Washington; that said William Huntley heretofore mentioned as secretary of said Inland Brewing and Malting Company is, and was at all of said times, the vice president of said Exchange National Bank, and had full knowledge of all of the transactions hereinafter mentioned between said bank, said brewing company, and this defendant.

"(3)    That on or about the 12th day of May, 1911, this defendant was, and ever since has been, engaged in the business of operating a retail liquor store or saloon at No. 8 Howard street in said city of Spokane, for the retailing of spirituous fermented malt and other intoxicating liquors; that the cost of the license for retailing such liquors, under the requirements of Ordinance No.——of the ordinances of said city of Spokane, was, at all time herein mentioned, one thousand dollars; that shortly before his license became due, defendant told said Inland Brewing and Malting Company that he did not have the ready money with which to pay said license; that said brewing company thereupon solicited from said Exchange National Bank, a loan of one thousand dollars, a portion of which is represented by the promissory notes set out in paragraph one of plaintiff's first and second causes of action herein, with which to pay said license; that said loan was made by said bank upon the solicitation of said brewing company; that defendant at no time, nor at all, requested or solicited a loan of said bank of one thousand dollars, or of any other sum whatsoever, or at all; that said bank made said loan at the request and solicitation of said brewing company and knew the purpose for which said loan

was made, and made the same after being fully advised by
said Theis and said Huntley of the use to which the money
so loaned, would be put; that said bank allowed its name to
be used as payee in said promissory notes, with the view to,
and for the purpose of, aiding and assisting said brewing
company, and did so aid and assist said brewing company
in evading and circumventing the law; that in truth, and in
fact, said brewing company paid said license for defendant,
contrary to law; that said promissory notes were taken by
said bank as a cloak under which to hide the fact that said
brewing company had, contrary to law, paid the license of
defendant, a retail liquor dealer; that said promissory notes
when signed by defendant, were not delivered to said bank
but were, by defendant, delivered to said brewing company;
that the one thousand dollars, for a portion of which said
two promissory notes were, by defendant, signed, was de-
livered by said bank to said brewing company, and not to
defendant; that by reason of having so paid said license, said
brewing company sought to, and did acquire, contrary to
law, a financial interest in defendant's retail liquor store."

Prior to the hearing on the demurrer, the parties stipu-
lated that the notes were first signed by the appellant and
then delivered to the brewing and malting company named
in the answer, and by that company in turn delivered to the
Exchange National Bank, and by the bank endorsed after
maturity to the respondent.

The statute on which the answer is based is found in the
Laws of 1909, at page 182 (Rem. & Bal. Code, § 6282),
and reads as follows:

"From and after the thirty-first day of December, 1909,
it shall be unlawful for any person, persons, firm or corpora-
tion engaged in the manufacture, rectifying or bottling of
spirituous, fermented malt or other intoxicating liquors or
engaged in buying, selling or disposing of the same in quan-
tities or five gallons or more to own all or any part of or to
have any interest in the liquor, stock, fixtures or equipment
of any kind whatsoever of any retail liquor store or to pay,
advance or loan or become surety for the payment for any
other person of the license fee required by any state law or
city charter or ordinance, or to hire, engage or employ, di-

rectly or indirectly, any person, persons, firm or corporation to manage, conduct, control or operate a place where intoxicating liquors are sold at retail, to wit: in less than five gallons at a time or to sign or become surety on any bond required by law of a retail liquor dealer."

In this court the respondent makes two principal contentions against the sufficiency of the answer; namely, (1) That the facts pleaded therein do not show a violation of the statute; and (2) that the statute is unconstitutional in so far as it has relation to the facts shown in the answer. Noticing the first of these contentions, it is at once apparent that the payee named in the notes is not within the class of persons who are denied the right "to pay, advance or loan or become surety for the payment for any other person of the license fee" required as a condition precedent to engaging in the barter and sale of intoxicating or malt liquors. But while the payee itself could do any or all of these things without violating any of the prohibitions of the statute, it could not with impunity lend its name as a cloak to cover similar transactions on the part of the prohibited persons. It could not make a loan for the purpose of paying a license fee, on the security of a person or corporation engaged in the manufacture of spirituous or malt liquors, nor could it loan in its own name for this purpose the money of the person or corporation so engaged, as to do these things would be such a participation in the illegal acts as to render void any contract or obligation made in connection therewith; and this although it be true, as counsel contend, that the bank could knowingly loan money to the brewing company to be used for paying such a license fee without rendering the contract of loan illegal or unenforcible.

And here it may be well to notice another contention of the respondent. It is claimed that the maker of a note is estopped to deny that the payee thereof is the real party in interest. But conceding this to be a general rule, it has no application to the question suggested here. The court lis-

tens to this defense not because of any desire to aid the maker of the note—indeed he is usually as culpable as the payee—but listens to it because of the public policy involved; because the parties in entering into the contract have violated the statute. A court will not knowingly aid in the furtherance of an illegal transaction. And in harmony with this principle, it does not concern itself as to the manner in which the illegality of a matter before it is brought to its attention. If such illegality appears in the pleadings of either party, it will not inquire into the technical accuracy of such pleading; if it appears in the statement of witnesses at the trial, it will not inquire into the technical admissibility of such statement as evidence, but will, in either case, start an inquiry of its own, and if it be found that the differences which it is called upon to adjudicate arise out of an illegal transaction it will leave the parties where it found them, to work out their differences as best they may. *Standard Furniture Co. v. Van Alstine*, 22 Wash. 670, 62 Pac. 145, 79 Am. St. 961, 51 L. R. A. 889, and cases there cited; *Baird v. Sheehan*, 38 App. Div. 7, 56 N. Y. Supp. 228; *Howe's Ex'r v. Griffin's Adm'r*, 126 Ky. 373, 103 S. W. 714, 128 Am. St. 296.

Tested by these rules, it is manifest that the court was in error when it refused to inquire into the legality of the transaction giving rise to the notes in suit. In the answer it is alleged that the brewing company named is a corporation engaged in manufacturing and bottling of fermented malt liquor, and in selling the same in quantities of five gallons and more; that the appellant is engaged in conducting a retail liquor store; that the brewing company solicited of the payee named in the note a loan of one thousand dollars to pay the license fee required of the appellant by the city of Spokane; that the payee knew the purpose for which the loan was desired; that it allowed its name to be used as payee of the notes "with the view to, and for the purpose of, aiding

and assisting said brewing company, and did so aid and assist said brewing company in evading and circumventing the law; that said promissory notes were taken by said bank as a cloak under which to hide the fact that said brewing company had, contrary to law, paid the license fee of defendant"; and that the notes when signed were not delivered to the bank by the appellant, but were delivered to the brewing company, who delivered them to the bank.

It may be that the answer is inartificially drawn, and it may be that conclusions are stated therein when a detail of facts would be more appropriate, but clearly it states enough to show a reasonable probability that the notes were signed by the maker and taken by the payee in the furtherance of an illegal transaction. The court, therefore, before entering judgment, should have entered upon an inquiry as to the facts concerning the making and delivery of the notes, and if it found the transaction illegal and that the payee participated therein, should have refused to aid in enforcing the collection of the notes.

The title of the act is as follows:

"An act to prohibit any manufacturer of or wholesale dealer in intoxicating liquor from owning, operating or having any financial interest in any saloon or other retail liquor store or in any retail liquor license in the state of Washington or to become surety on any liquor dealer's bond and providing penalties for violation thereof."

The act, it will be remembered, makes it an offense for a person or corporation engaged in the manufacture, rectifying or the bottling of spirituous, fermented, malt or other intoxicating liquors "to pay, advance or loan or become surety for the payment for any other person of the license fee required by any state law, city charter or ordinance" for the sale of intoxicating or malt liquors in less than five gallons at a time. It is the contention of the respondent that the answer, if it sets forth a violation of the statute at all, sets forth a violation of that portion of the statute which

we have quoted, and that such portion is not within the title of the act. It is argued that a person reading the title of the act would not be apprised of the fact that the act prohibits a brewery from loaning money to a retail liquor dealer for the purpose of paying his license fee, or from becoming his surety to another who makes a loan for that purpose, and inasmuch as the title is thus deficient, this particular part of the statute is not enforcible because not within the title. But we have many times held that it is not required that everything in the body of the act be pointed out in the title, as this would require the title to be an index to the body of the act, or the body of the act to be a mere repetition of the title. But that it is sufficient if the matters contained in the body of the act are fairly embraced therein. *Marston v. Humes*, 3 Wash. 267, 28 Pac. 520; *Lancey v. King County*, 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817; *Johnston v. Wood*, 19 Wash. 441, 53 Pac. 707; *Seattle v. Barto*, 31 Wash. 141, 71 Pac. 735; *State v. Sharpless*, 31 Wash. 191, 71 Pac. 737, 96 Am. St. 893; *Shortall v. Puget Sound Bridge & Dredging Co.*, 45 Wash. 290, 88 Pac. 212, 122 Am. St. 899; *State v. Jones*, 66 Wash. 229, 119 Pac. 384. Under the rules as announced in these cases, we think the title sufficient. We think the words in the title, namely, "to prohibit any manufacturer or wholesale dealer in intoxicating liquors from  . . . .  having any interest in any saloon or other retail liquor store, or in any retail liquor license," are broad enough to include a clause in the body of the act prohibiting any manufacturer of, or wholesale dealer in, intoxicating liquors from advancing money to pay, or becoming surety for the payment of, a retail dealer's liquor license.

A second ground on which the act is said to be unconstitutional is that it deprives manufacturers of, and wholesale dealers in, intoxicating liquors of their property without due process of law, and hence is in violation of the Federal as well as the state constitution. But it has seemed to us that

this question is scarcely any longer debatable. The act is but another form of regulation of the traffic in intoxicating liquors, and to regulate the sale and use of intoxicating liquors is now among the universally recognized powers of the state governments.

The judgment is reversed, and the cause remanded for a new trial.

MOUNT, MAIN, ELLIS, and MORRIS, JJ., concur.