ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* PAUL.   AND TWO OTHER CASES.

Opinion delivered May 1, 1897.

RAILROADS—POWERS.—Railroad companies possess only those rights, powers or properties which the charters of their creation confer upon them, either expressly or as incidental to their existence. (Page 86.)

CORPORATION—AMENDMENT OF CHARTER.—The act of March 25, 1889, requiring corporations operating railroads to pay to their employees on the day of their discharge their unpaid wages' then earned at the contract rate, and imposing a penalty for failure to do so, is a valid exercise by the state of the power reserved by the constitution (art. 12, § 6) to alter or amend any charter of incorporation. (Page 86.)

CONSTITUTIONAL LAW—EQUALITY OF PROTECTION.—The act of March 25, 1889, imposing a penalty upon railroad corporations for failure to pay off their employees upon the day of their discharge, does not deny to that class of corporations the equal protection of the law, within the inhibition of the fourteenth amendment of the Constitution of the United States. (Page 89.)

PENALTY FOR NON-PAYMENT OF WAGES—REASONABLENESS.—The penalty imposed by the act of March 25, 1889, for failure of a railroad company to pay the wages of an employee upon the day of his discharge, namely, that such ''wages shall continue at the same rate until paid, *provided* that such wages shall not continue more than sixty days unless an action therefor shall be commenced within that time,'' is not unreasonable or excessive. (Page 92.)

STATUTE—AMENDMENT.—The provision of the constitution (art. 5, § 23), that no law shall be amended by reference to its title merely, but that so much thereof as is amended shall be enacted and published at length, does not prohibit the legislature from impliedly amending a prior statute without enacting and publishing at length so much thereof as is so amended. (Page 95.)

The first case on appeal from Saline Circuit.

ALEXANDER M. DUFFIE, Judge.

The second two cases on appeal from Craighead Circuit Court, Jonesboro District.

WILLIAM H. CATE, Judge.

*Dodge & Johnson,* for appellant St. Louis, Iron Mountain & Southern Railway Company.

The act of March 25, 1889, is unconstitutional and void, because: (1) It is violative of § 1 of the fourteenth amendment to the constitution of the United States. 13 Fed. Rep. 757; 96 U. S. 529; 43 Mich. 141, 147; 4 Wall. 325; 92 U. S. 268; 95 *id.* 472; 49 Ark. 494; 113 Pa. St. 431; 33 W. Va. 431; 117 Ill. 294; 19 S. W. Rep. 910; 90 N. Y. 52; 34 Cent. L. J. 78; 23 Fed. Rep. 791; 6 Neb. 37; 22 S. W. Rep. 351, 352; 31 L. R. A. 52. (2) It violates the eighth amendment of the constitution of the United States and art. 2, § 9, constitution of Arkansas. The penalty is excessive. (3) If the act was intended to be amendatory, it is clearly within the provision of § 6, art. 12, constitution Arkansas. 4 Neb. 357; 7 *id.* 413. The provision is mandatory. 41 Ala. 9; 4 La. An. 297.

*Wallace Pratt,* and *Olden & Orr,* for appellant Kansas City, Fort Scott & Memphis Railroad Company.

1. The provisions of §§ 2, 8 and 18 of the bill of rights, constitution of Arkansas, apply to corporations as well as to natural persons. 109 N. Y. 389; 33 W. Va. 179, 188; 92 Tenn. 81; 115 Mo. 315; 155 Mass. 117; 147 Ill. 66; 19 S. W. Rep. 910; 41 Neb. 127; 85 Cal. 274; 31 S. W. Rep. 781; 118 U. S. 396; 142 *id.* 390; 125 *id.* 181; 129 *id.* 26.

2. Conceding the law to be valid as an amendment to the charters of corporations, and invalid as to natural persons, the unconstitutional clauses cannot be rejected without causing the statute to enact what the legislature never intended. The act is not separable. 118 U. S. 90; 114 *id.* 270, 304; 2 Gray, 84; 14 Mich. 276; 28 Wis. 541; 62 Tex. 630; 5 W. Va. 515; 5 Ill. 461; 79 Pa. St. 164; 158 U. S. 635; 37 Ark. 356; 46 *id.* 312; 53 *id.* 490; 48 *id.* 370; 55 *id.* 200; Cooley, Const. Lim. 391; 49 Ark. 291; 128 U. S. 205; 31 S. W. 781; 75 Mo. 354; 71 *id.* 645.

3. Treated as an amendment to the general corporation laws, the act in question does not comply with § 23, art. 5, constitution Arkansas.

BATTLE, J.   The appellees, Charles Paul, John Boland and Fritz Whiddick, were day laborers in the employment, respectively, of the appellants, the St. Louis, Iron Mountain & Southern Railway Company, and the Kansas City, Fort Scott & Memphis Railroad Company; one earning one dollar and twenty-five cents a day, and each of the other two one dollar and thirty-five cents.   Their employers discharged them without paying the wages they had, respectively, earned; and each brought a suit against his debtor for the amount due him, and the damages allowed by the act of the general assembly of the State of Arkansas, entitled "An act to provide for the protection of servants and employees of railroads," approved March 25, 1889. The defendants did not deny that the wages claimed were due them, but resisted the recovery of the damages on the ground that the act under which they were claimed was in violation of the fourteenth amendment of the constitution of the United States, and of the constitution of the State of Arkansas.

The first section of the act in question, to the extent it was sustained in *Leep* v. *Railway Company*, 58 Ark. 407, is as follows:   "Whenever any corporation engaged in the business of operating or constructing any railroad or railroad bridge shall discharge with or without cause, or refuse to further employ, any servant or employee thereof, the unpaid wages of any such servant and employee then earned at the contract rate, without abatement or deduction, shall be and become due and payable on the day of such discharge or refusal to longer employ; and if the sum be not paid on such day, then, as a penalty for such non-payment, the wages of such servant or employee shall continue at the same rate until paid.   *Provided*, such wages shall not continue more than sixty days, unless an action therefor shall be commenced within that time."   In sustaining it, the court held that the words " without abatement or deduction," as used in the act, mean  " that the unpaid wages earned at the contract rate, at the time of the discharge, shall be paid without discount on account of the payment thereof before they were payable according to the terms of the contract of employment."

The railroad companies contend that they are "persons," within the meaning of that word as used in the fourteenth

amendment of the constitution of the United States; and that the act in question, as sustained and construed in *Leep* v. *Railway Company*, *supra*, is in violation of the amendment in this that it denies to them the "equal protection of the law." If it be conceded that they are persons, as contended, it would not follow that they are entitled to all the rights of natural persons. They possess only those rights, powers, or properties which the charters of their creation confer upon them, either expressly or as incidental to their existence. The same is true of all other corporations. All of them are creatures of the legislature. In their creation the legislature could and did divide them into classes, and give to each class such rights, capacities and powers as it saw fit. Neither has the right to complain of a discrimination in favor of one agent against the other, or that all or any of the rights of natural persons have not been given to it.

The powers conferred upon them by their charters may be modified or diminished by amendment, or extinguished by the repeal of the charters. The constitution of this state ordains: " The general assembly shall have the power to alter, revoke or amend any charter of incorporation now existing and revocable at the adoption of this constitution, or any that may hereafter be created, whenever, in their opinion, it may be injurious to the citizens of this state; in such manner, however, that no injustice shall be done to the corporators." Const. 1874, art. 12, § 6. The railroad companies in this case do not deny, but tacitly concede, that their charters are subject to alteration under this provision of the constitution. The question is, did the legislature have the power to do so in the manner and to the extent it undertook by the act in question?

In commenting upon such a power to amend, which was reserved by the state of California, Mr. Justice Field, in delivering the opinion of the court in *The Railroad Tax Cases*, 13 Fed. Rep. 754, said: "It [the state] may confer, by its general laws, upon corporations certain capacities of doing business, and of having perpetual succession in their members. It may make its grant in these respects revocable at pleasure; it may make the grant subject to modifications, and impose conditions upon its use, and reserve the right to change these at will. But

whatever property the corporations acquire in the exercise of the capacities conferred they hold under the same guaranties which protect the property of individuals from spoliation. It cannot be taken for public use without compensation. It cannot be taken without due process of law, nor can it be subjected to burdens different from those laid upon the property of individ· uals under like circumstances. The state grants to railroad corporations formed under its laws a franchise, and over it re- tains control, and may withdraw or modify it. By the reserva- tion clause it retains power only over that which it grants; it does not grant the rails on the road; it does not grant the depots along-side of it; it does not grant the cars on the track, nor the engines which moves them, and over them it can exer- cise no power except such as may be exercised through its con- trol over the franchise, and such as may be exercised with reference to all property used by carriers for the public. The reservation of power over the franchise,—that is, over that which is granted,—makes its grant a conditional or revocable contract, whose obligation is not impaired by its revocation or change."

In the *Sinking-Fund Cases*, 99 U. S. 700, the question was whether Congress had the constitutional power to enact a law compelling the Union Pacific and Central Pacific Railroad Com- panies to set aside a portion of their current earnings as a sink- ing fund for the purpose of meeting a very large indebtedness secured by mortgage upon the roads, and payable at a future day. The majority of the court held that the legislation was valid as an exercise of the general legislative powers of the government, and also because the right to alter or amend the charters of the companies had been expressly reserved to Con- gress. In commenting on the reserved power to amend or repeal the charters of corporations in that case, Chief Justice Waite, in delivering the opinion of the court, said: "All agree that it cannot be used to take away property already acquired under the operations of the charter, or to deprive the corporation of the fruits actually reduced to possession of con- tracts lawfully made; but, as was said by this court, through Mr. Justice Clifford, in *Miller* v. *The State* (15 Wall. 498), 'it may safely be affirmed that the reserved power may be exer- cised, and to almost any extent, to carry into effect the original

purposes of the grant, or to secure the due administration of its affairs, so as to protect the rights of stockholders and of creditors, and for the proper disposition of its assets;' and again, in *Holyoke Company* v. *Lyman* (*id* 519), 'to protect the rights of the public and of the corporators, or to promote the due administration of the affairs of the corporation.' Mr. Justice Field, also speaking for the court, was even more explicit when, in *Tomlinson* v. *Jessup* (*id.* 459), he said, 'the reservation affects the entire relation between the state and the corporation, and places under legislative control all rights, privileges, and immunities derived by its charter directly from the state;' and again, as late as *Railroad Company* v. *Maine* (96 U. S. 510), 'by the reservation  *  \*  \**   the state retained the power to alter it [the charter] in all particulars constituting the grant to the new company, formed under it, of corporate rights, privileges, and immunities.' Mr. Justice Swayne, in *Shields* v. *Ohio* (95 U. S. 324), says, by way of limitation, 'the alterations must be reasonable; they must be in good faith, and be consistent with the object and scope of the act of incorporation. Sheer oppression and wrong cannot be inflicted under the guise of amendment or alteration.' The rules, as here laid down, are fully sustained by authority. * * . * Giving full effect to the principles which have thus been authoritatively stated, we think it safe to say that whatever rules Congress might have prescribed in the original charter for the government of the corporation in the administration of its affairs, it retained the power to establish by amendment. In so doing it cannot undo what has already been done, and it cannot unmake contracts that have already been made, but it may provide for what shall be done in the future, and may direct what preparation shall be made for the due performance of contracts already entered into. It might originally have prohibited the borrowing of money on mortgage, or it might have said that no bonded debt should be created without ample provision by sinking fund to meet it at maturity. Not having done so at first, it cannot now by direct legislation vacate mortgages already made under the powers originally granted, nor release debts already contracted. A prohibition

now against contracting debts will not avoid debts already incurred."

The act of March 25, 1889, does not interfere with the disposition or control of the property of railroad companies, with their vested rights, or with contracts already made. All it requires them to do is to pay the wages earned by their servants or employees under contracts entered into after its enactment, at the time they discharge them or refuse to give them further employment. The effect of this requirement is to make the wages payable at the time of the discharge or refusal to employ, and to limit the right to contract. But this right was derived from the laws under which the railroad companies were organized, and, according to the cases cited, was subject to be limited, regulated and controlled by the general assembly, under the constitution of this state, whenever, in its opinion, it may be beneficial to the public, in such manner as may be just to the corporators. Consequently, no right of the railroad companies was violated by the act in limiting the right to contract. *Leep* v. *Railroad Company*, 58 Ark. 407.

In the *Sinking-Fund Cases* the act of Congress required the railroad companies to provide for the payment of certain debts by a sinking fund before their maturity; virtually to pay debts before they were due. The act of March 25th requires the wages of the laborer to be paid when he leaves the employment of the company. One applies to past, the other to future, transactions; one to secured debts, the other to the wages of the laborer. The object of each is the enforcement of a duty,—the payment of debts. If the former act is constitutional, how can the latter be unconstitutional?

But an act of the legislature is not necessarily unconstitutional, in the absence of a reservation of the power to alter or revoke charters, and does not deny the equal protection of the law, because it imposes certain duties and liabilities upon only one class of corporations, and upon no others. In *Missouri Pacific Railway Company* v. *Mackey*, 127 U. S. 205, a statute of Kansas provided that every railroad company organized or doing business in that state "shall be liable for all damages done to any employee of such company in consequence of any negligence of its agents, or by any mismanagement of its

engineers, or other employees, to any person sustaining such damage." Mr. Justice Field, in delivering the opinion of the court said: "Such legislation does not infringe upon the clause of the fourteenth amendment requiring equal protection of the laws, because it is special in its character; if in con-flict at all with that clause, it must be on other grounds. And when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions. A law giving to mechanics a lien on buildings constructed or repaired by them, for the amount of their work, and a law requiring railroad corporations to erect and maintain fences along their roads, separating them from lands of adjoining proprietors, so as to keep cattle off their tracks, are instances of this kind. Such legislation is not obnoxious to the last clause of the fourteenth amendment, if all persons subject to it are treated alike under similar circumstan-ces and conditions in respect to both of the privileges conferred and the liabilities imposed. It is conceded that corporations are persons within the meaning of the amendment. * * * * * But the hazardous character of the business of operating a railway would seem to call for special legislation with respect to railroad corporations, having for its object the protection of their employees as well as the safety of the public. The busi-ness of other corporations is not subject to similar dangers to their employees, and no objections, therefore, can be made to the legislation on the ground of its making an unjust discrimi-nation. It meets a particular necessity, and all railroad corpo-rations are, without distinction, made subject to the same lia-bilities. As said by the court below, it is simply a question of legislative discretion whether the same liabilities shall be applied to carriers by canal and stage coaches and to persons and corpo-rations using steam in manufactories."

In the last case cited the protection of the employees of railroad companies, as in this case, was the object of the act in question. The act in that case, as in this, applies to only one class of corporations, and to no others. But the act of March 25th is not dependent on the same power to legislate. The con-

stitution of this state, as before stated, expressly provides that
the general assembly shall have the power to alter, revoke or
annul any charter of incorporation now existing and revocable
at the adoption of the constitution, or any that may thereafter
be created, whenever, in their opinion, it may be injurious to
the citizens of this state; in such manner, however, that no
injustice shall be done to the corporators. In *Leep* v. *Railway
Company*, 58 Ark. 407, we held that the legislature had the
power to pass the act of March 25th by virtue of this provision
of the constitution. In justifying it, however, we based it, as
in the case cited, upon the peculiar character of the business
of railroads, and the particular benefits to be derived therefrom
by the public. We said: "Whenever the charters of railroad
companies become obstacles in the way of the legislature so
regulating their roads as to make them subserve the public
interest to the fullest extent practicable, their charters are, in
that respect, injurious to the citizens of the state, and can be
amended as to defects in such manner as will be just to the
corporators. For they are organized for a public purpose, and
their roads are declared by the constitution to be public high-
ways, and they are made common carriers. They are clothed
with a public trust, and in many respects are expressly sub-
jected by the constitution to the control of the legislature.
There is no enterprise in which the public is so largely interested
as it is in the successful and efficient operation of railroads.
With the trust with which they are clothed is imposed the duty
to serve the public as common carriers in the most efficient
manner practicable. For this reason the legislature may impose
on them such duties as may be reasonably calculated to secure
such results. Being created by statute, the legislature may so
change them by amendment as to make them subserve the
purpose for which they were created. If the legislature, in its
wisdom, seeing that their employees are and will be persons
dependent on their labor for a livelihood, and unable to work
on a credit, should find that better servants and service could
be secured by the prompt payment of their wages on the
termination of their employment, and that the purpose of their
creation would thereby be more nearly accomplished, it might
require them to pay for the labor of their employees when the

same is fully performed, at the end of their employment," and might require them to do so for the purpose of preventing that discontent produced by the non-payment of wages upon discharge which may lead to "strikes," and consequent injury to the interest of the public.

Another evidence of the validity of the act in question may be adduced: The legislature has the power to limit the right of railroad companies to contract by fixing the maximum of charges for the transportation of persons and property over their roads for the protection of passengers and shippers. When the rates of charges allowed are sufficient to yield a reasonable profit, the statute by which they are fixed is within the limits of the power. So, in this case the act in question is an exercise of, and is within the limits of, the same power. It does not seriously impair the right of corporations to contract, but leaves them to contract with their employees on profitable terms; and, in view of the public interest thereby subserved, is just to the corporators. *Leep* v. *Railway Company*, 58 Ark. 407.

The validity of the act of March 25th is assailed upon the ground that the exemplary damages allowed for the non-payment of wages are excessive and unreasonable. The same complaint was made of a statute of Iowa, which is as follows: "Any corporation operating a railway that fails to fence the same against live stock running at large at all points where such right to fence exists, shall be liable to the owner of any such stock injured or killed by reason of the want of such fence for the value of the property or damage caused, unless the same was occasioned by the wilful act of the owner, or his agent. * * * And if such corporation neglects to pay the value of or damage done to such stock within thirty days after notice in writing, accompanied by an affidavit of such injury or destruction, has been served on any officer, station or ticket agent employed in the management of the business of the corporation in the county where the injury complained of was committed, such owner shall be entitled to recover double the value of the stock killed or damage caused thereto." The penalty in that act is imposed on account of the non-payment of damages within the thirty days. The validity of the statute was contested in *Minneapolis & St. P. R. Co.* v. *Beckwith*, 129 U. S. 26.

Mr. Justice Field, speaking for the court, said: "As it is the duty of the railway company to keep its track free from animals, its neglect to do so by adopting the most reasonable means for that purpose, the fencing of its roadway as indicated by the statute of Iowa, justly subjects it, as already stated, to punitive damages, where injuries are committed by reason of such neglect. The imposition of punitive or exemplary damages in such cases cannot be opposed as in conflict with the prohibition against the deprivation of property without due process of law. It is only one mode of imposing a penalty for the violation of duty, and its propriety and legality have been recognized, as stated in *Day* v. *Woodworth*, 13 How. 363, 371, by repeated judicial decisions for more than a century. Its authorization by the law in question to the extent of doubling the value of the property destroyed, or of the damage caused, upon refusal of the railway company, for thirty days after notice of the injury committed, to pay the actual value of the property or actual damage cannot therefore be justly assailed as infringing upon the fourteenth amendment of the constitution of the United States."

So in the act of March 25th it is made the duty of railroad corporations to pay the wages of an employee at the end of his employment. To enforce the performance of this duty, exemplary or punitive damages are imposed upon them for the failure to do so; that is, the liability to pay the wages at the contract rate until the wages earned on the day of the discharge or refusal to longer employ are paid. They are not necessarily more unreasonable, then, or as much so, as those allowed by the Iowa statute. The railroad company can stop them by the payment or tender of payment of the amount due the employee for wages actually earned. No other amount need be tendered for that purpose. But, if it does not adopt this course, the damages will not accrue for more than sixty days, "unless an action therefor shall be commenced within that time." The bringing of the action calls its attention to the demands of the employee, and continues the wages (damages) beyond the sixty days unless the company pays, or offers to pay, the wages earned at an earlier day. If it then fails to pay, the continuance of the penalty is due to its own fault. But it can

only continue up to the trial, when the cause of action is merged in the judgment. The law which prohibits the dividing a cause of action, and the bringing of a separate action upon each part (*Reynolds* v. *Jones*, 63 Ark. 259), and merges the cause of action into the judgment, is not changed by the act, which is not inconsistent with the rule in such cases.

The damages imposed by the act in question for a violation of the duty enjoined are commensurate with the violation, and are within the limits of the discretion of the legislature. Like the penalty imposed by the act which was sustained by the court in *State ex rel. Barton Co.* v. *Kansas City, Ft. S. & G. R. Co.*, 32 Fed. Rep. 722, they are large or small as the delay to pay is of long or short duration.

Our attention has been called to *Gulf, C. & S. F. R. Co.* v. *Ellis*, 17 S. C. Rep. 255. The statute involved in that case provided that railroad companies failing to pay claims for labor, damages, overcharges on freight, or for stock killed or injured by trains, amounting to less than fifty dollars, within thirty days after presentation thereof, and to reduce the same in a suit thereon, shall be liable for an attorney's fee not exceeding ten dollars. This penalty was not imposed because of the violation of any duty rightfully imposed upon railroad companies, but merely for the failure to defeat the recovery of the full amount of the claim sued on. It was not an amendment, or in the nature of an amendment, of the charters of railroad corporations; and, if it was, it does not appear to have been made by virtue of any power reserved to the legislature. The court held that it was unconstitutional because it arbitrarily imposed a penalty upon a class of corporations which is not imposed upon others guilty of a like delinquency, and because it punishes a railroad company for defending a suit brought against it, if it fails to defeat the recovery of the full amount sued for. The act was like that held by this court, in *St. Louis, Iron Mountain & Southern Railway Co.* v. *Williams*, 49 Ark. 492, to be unconstitutional. The act in question in that case provided for the appointment of a board to assess damages, and that if either party refused to abide by the assessment of the board, and a suit was brought, the party refusing should be taxed with an attorney's fee, in the event the judgment of

the court should not be more favorable to him than the award of the board. This court held that the act was unconstitutional, because the legislature had no power to substitute boards of arbitration for the courts without the consent of the parties; that the courts, organized under the constitution, had exclusive jurisdiction to hear and determine all controversies referred to in the act, and could not be deprived of it by the legislature. But the act of March 25th is not subject to the same objections as the act involved in *Gulf, C. & S. F. Ry. Co.* v. *Ellis, supra.* It does not arbitrarily impose a penalty, but it rightfully enjoins a duty, and imposes a penalty for the failure to discharge the duty. It was enacted by the legislature in the exercise of the power to regulate railroad companies for the advancement of the interest of the public, and for the protection of their employees against the unnecessary withholding of their earnings, and consequent injuries.

Appellants deny that the legislature has the power to amend their charters, except by enacting and publishing at length so much thereof as is amended. This contention is based on a section of the constitution which provides that "no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended or extended or conferred, shall be enacted and published at length." But it is not correct. It is well settled in this and other states, where such constitutional limitations are in force, that a statute repeals, or operates as an amendment of, a prior law on the same subject, to the extent that they are in conflict, although the latter is not mentioned in the former. *Scales* v. *State*, 47 Ark. 481; *Churchill* v. *Hill*, 59 Ark. 54, 64; *Leep* v. *Railway Company*, 58 Ark. 407; *People* v. *Mahaney*, 13 Mich. 481, 496–7; *Lehman* v. *McBride*, 15 Ohio St. 573; *Shields* v. *Bennett*, 8 W. Va. 74, 87; *Baum* v. *Raphael*, 57 Cal. 361; *Denver Circle R. Co.* v. *Nestor*, 10 Col. 405; *Evernham* v. *Hulit*, 45 N. J. L. 53; *Sheridan* v. *Salem*, 14 Oregon, 328, 337; *Davis* v. *State*, 7 Md. 151; Cooley, Const. Lim. (6th Ed.), 182; 1 Thompson, Corporations, §·94, and cases cited.

We therefore conclude that the act of March 25th, so far as it effects corporations, does not violate the fourteenth amend-

ment of the constitution of the United States, nor the constitution of the state of Arkansas, and to that extent is a valid act.

The judgments appealed from are affirmed.

NOTE.—The authorities in other states on the validity of statutes regulating the time for payment of wages are collected in a note to *Re House Bill No. 1230* (Mass.), 28 L. R. A. 344.—(Rep.)