[No. 6316.    Decided January 9, 1907.]

JOHN SHORTALL, *Respondent*, v. PUGET SOUND BRIDGE & DREDGING COMPANY, *Appellant*.[1]

STATUTES—TITLE—AMENDMENTS.  The title "An act amending . . . an act to provide for the payment of wages of labor in lawful money of the United States and to punish violations of the same" is broad enough to include a provision prescribing the time when such wages become due and payable, within the rule that the title need not be an index of the act but is sufficient if it fairly indicates its substance and scope.

CONSTITUTIONAL LAW—DUE PROCESS—MASTER AND SERVANT—REGULATION OF PAYMENT OF WAGES.  An act providing that the wages of labor shall be forthwith paid on cessation of the work is in accordance with a sound public policy, and is not unconstitutional as a deprivation of liberty or property without due process of law, and renders the same at once due, notwithstanding a written contract postponing the date of payment upon the employee's voluntarily leaving the service.

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 16, 1906, upon stipulated facts in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover wages due an employee.  Affirmed.

*Ballinger, Ronald, Battle & Tennant*, for appellant, to the point that the statute is void as an unwarranted interference

[1]Reported in 88 Pac. 212.

with the right to contract, cited: *Godcharles v. Wigeman,*
113 Pa. St. 431, 6 Atl. 354; *State v. Goodwill,* 33 W. Va.
179, 10 S. E. 285, 25 Am. St. 863, 6 L. R. A. 621; *State
v. Fire Creek Coal & Coke Co.,* 33 W. Va. 188, 10 S. E. 288,
25 Am. St. 891, 6 L. R. A. 359.

*Dudley G. Wooten,* for respondent.

Fullerton, J.—This is an action brought by the re-
spondent, who was plaintiff below, to recover of the appellant
the sum of $21.36 claimed to be due as wages. The facts
were stipulated, and are in substance these: The appellant
is a corporation of the state of Nevada, authorized to do
business in the state of Washington, and engaged in business
at Bremerton. On August 31, 1905, it employed the re-
spondent as a laborer, at a stipulated wage, taking from him
a written promise in the following words:

"Know all men by these presents, that the undersigned,
in accepting employment from the Puget Sound Bridge and
Dredging Company, a corporation of the state of Nevada,
agrees to be bound by the rules governing the employees of
said company in every respect, and specifically agrees to be
bound by the rules in regard to payment for wages;

"To wit: That payment for labor performed in one month
shall be made on the regular pay day, the 15th of the month
following, unless in case of being discharged, or laid off on
completion of work on hand, in which case I agree to wait
for payment until reports can be made to the office, of time
employed and rate of payment, when the said Puget Sound
Bridge and Dredging Company agree to make payment
within ten days thereafter in full for services rendered.

"Every employee injured while in performance of his duties
will be entitled to medical attendance for which a hospital
fee of $1.00 per month will be deducted from the wages of
each employee.

"Further and more specifically, the undersigned agrees not
to leave the employ of the said Puget Sound Bridge and
Dredging Company except upon due notice to them, and
upon voluntarily leaving their employ agrees to await pay-

ment of wages until the fifteenth of the following month, as aforesaid.

"Dated at Bremerton this 31st day of August, 1905.

"John Shortall."

The respondent continued in the employ of the appellant from the date of the execution of the writing up to and including October 15, 1905, voluntarily quitting such employment on the morning of the next day. He had been paid at that time in full for all of his earnings prior to October 1, 1905, leaving unpaid only the amount earned by him between the 1st and the 16th of that month. This sum, it is agreed, amounted, after making all proper deductions, to $21.36. On quitting the appellant's employment, the respondent demanded immediate payment of this sum, but was refused on the ground that it was not due and payable, under the terms of the contract, until November 15, 1905. This action was begun on October 18, 1905, two days after the respondent quit the services of the appellant. The respondent bases his right to recover on the act approved February 2, 1888, and the act amendatory thereof, approved March 9, 1905. The appellant concedes that these acts, if valid, allow a recovery on the part of the respondent, but he contends that they are void, because being in contravention of both the state and Federal constitutions.

The act of February 2, 1888, was entitled, "An act to provide for the payment of wages of labor in the lawful money of the United States and to punish violation of the same." The first section thereof reads as follows:

"That it shall not be lawful for any corporation, person or firm engaged in manufacturing of any kind in this territory, mining, railroading, constructing railroads, or any business or enterprise of whatsoever kind in this territory, to issue, pay out or circulate for payment of wages of any labor, any order, check, memorandum, token or evidence of indebtedness, payable in whole or in part otherwise than in lawful money of the United States, unless the same is negotiable and redeemable at its face value, without discount,

in cash or [on] demand, at the store or other place of business of such firm, person or corporation when the same issued, and the person who, or company which may issue any such order, check, memorandum, token or other evidence of indebtedness shall upon presentation and demand redeem the same in lawful money of the United States." Laws 1888, p. 234.

The amendatory act was entitled:, "An act amending section 1 of an act entitled, 'An act to provide for the payment of wages of labor in lawful money of the United States and to punish violations of the same,' approved February 2, 1888, being section 3305 of Ballinger's Annotated Codes and Statutes of the State of Washington." It amended the section above quoted so as to make the same read as follows:

"Section 1.    That it shall not be lawful for any corporation, person or firm engaged in manufacturing of any kind in this state, mining, railroading, constructing railroads, or any business or enterprise of whatsoever kind in this state, to issue, pay out or circulate for payment of wages of any labor, any order, check, memorandum, token or evidence of indebtedness, payable in whole or in part otherwise than in lawful money of the United States, unless the same is negotiable and redeemable at its face value, without discount, in cash or on demand, at the store or other place of business of such firm, person, or corporation when the same is issued, and the person who, or company which may issue any such order, check, memorandum, token or other evidence of indebtedness shall upon presentation and demand redeem the same in lawful money of the United States. And when any laborer performing work or labor as above shall cease to work whether by discharge or by voluntary withdrawal, the wages due shall be forthwith paid either in cash or by order redeemable in cash at its face value on presentment at bank, store, commissary, or other place in the county where the labor was performed: Provided, Such order may be given payable in another county when the place of employment is more convenient of access to the employe." Laws 1905, p. 219.

The amendment consisted, it will be observed, of the addition to the original section of the clause making the wages

earned by laborers under the recited conditions payable whenever the laborer ceased work, whether of his own volition, or because discharged by his employer. The respondent's right of recovery is dependent upon this amendment, and against its validity the appellant makes two contentions; first, that the title of the amendatory act is not broad enough to include the subject-matter of the amendment; and, second, that the act as amended violates that provision of the constitution which provides that, "No person shall be deprived of life, liberty or property without due process of law," and the similar provision contained in the fourteenth amendment of the Federal constitution.

On the first question it is the contention of the appellant that the title of the act, while sufficient to cover an enactment prescribing the medium in which the wages of laborers must be paid, is insufficient to cover an enactment prescribing the *time* when such wages become due and payable. But it seems to us that the subject-matter of the amendment is fairly within the title. This court has uniformly held that the title need not be an index of the act, but is sufficient if it so indicates its substance and scope as to put a person of ordinary intelligence upon notice and inquiry as to its provisions. *State ex rel. Zenner v. Graham*, 34 Wash. 81, 74 Pac. 1058; *State ex rel. Osborne, Tremper & Co. v. Nichols*, 38 Wash. 309, 80 Pac. 462; *Weed v. Goodwin*, 36 Wash. 31, 78 Pac. 36; *State v. Fraternal Knights & Ladies*, 35 Wash. 338, 77 Pac. 500; *State v. Scott*, 32 Wash. 279, 73 Pac. 365. We think the title sufficiently broad to bring the act within the rule announced in these cases.

The second contention is that the act in question is unsupported by any principle of public policy. But we think the practice, pursued by certain employers of labor, of paying the wages of their employees in orders drawn upon stores redeemable in commodities other than lawful money of the United States, and of postponing the day of payment until long after the wages were earned, was a real evil, operating to

the detriment of the wage earner, and consequently to the detriment of the state. As such the practices were subject to correction by the legislature, and its act in that regard was well within the rules of sound public policy.

Acts of this nature have been passed by the majority of the states of the Union, and are supported by the great weight of the decisions of the state courts and by the supreme court of the United States. Industrial Commission Reports (1900), Vol. 5, p. 55 *et seq.; Shaffer & Munn v. Union Min. Co.,* 55 Md. 74; *Hancock v. Yaden,* 121 Ind. 366, 23 N. E. 253, 16 Am. St. 396, 6 L. R. A. 576; *State v. Peel Splint Coal Co.,* 36 W. Va. 802, 15 S. E. 1000, 17 L. R. A. 385; *State v. Brown & Sharpe Mfg. Co.,* 18 R. I. 16, 25 Atl. 246, 17 L. R. A. 856; *St. Louis etc. R. Co. v. Paul,* 64 Ark. 83, 40 S. W. 705, 62 Am. St. 154, 37 L. R. A. 504; *In re Scrip Bill,* 23 Colo. 504, 48 Pac. 512; *Harbison v. Knoxville Iron Co.,* 103 Tenn. 421, 53 S. W. 955, 76 Am. St. 682, 56 L. R. A. 316; *Opinion of the Justices,* 163 Mass. 589, 40 N. E. 713, 28 L. R. A. 344; *Avent Beattyville Coal Co. v. Commonwealth,* 96 Ky. 218, 28 S. W. 502, 28 L. R. A. 273; *St. Louis etc. R. Co. v. Paul,* 173 U. S. 404, 19 Sup. Ct. 419, 43 L. Ed. 746; *Knoxville Iron Co. v. Harbison,* 183 U. S. 13, 22 Sup. Ct. 1, 46 L. Ed. 55.

We conclude therefore that the act in question is not unconstitutional on either ground stated. The judgment appealed from will stand affirmed.

MOUNT, C. J., CROW, DUNBAR, and HADLEY, JJ., concur.

ROOT, J. (concurring specially)—I deem the statute constitutional; but think it well to say that this does not mean that it applies to a contract such as these parties had, by the express terms of which the wages did not become "due" until several days after respondent's withdrawal. The sum involved herein being below the jurisdictional amount, we cannot pass upon the application of the statute to this contract.