[No. 17519.   Department Two.   January 18, 1923.]

FRANK BURDETTE, *Respondent*, v. BROADVIEW DAIRY COMPANY, *Appellant*.[1]

APPEAL (418)—REVIEW—FINDINGS. Findings that lien notices were timely assigned will not be disturbed on appeal where it cannot be said that the evidence preponderates against them.

APPEAL (108)—PRESERVATION OF GROUNDS — OBJECTIONS NOT RAISED BELOW. In an action on a laborer's lien against a dairy company, it cannot be first urged on appeal that there was neither allegation nor proof that the defendant was a manufacturing company, under the lien statute, in view of Rem. Comp. Stat., § 1736, requiring an examination of the evidence *de novo* on appeal, so far as the findings of fact or refusal of findings shall have been excepted to.

MASTER AND SERVANT (13-1)—PAYMENT OF WAGES—CONTRACT—STATUTORY REGULATION—PUBLIC POLICY. Rem. Comp. Stat., § 7594, requiring wages to be paid forthwith on ceasing work, establishes a rule of public policy, and cannot be evaded by a contract of employment providing for one week's notice of voluntary withdrawal on account of the nature of and public interest in the employment.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered January 7, 1922, upon findings in favor of the plaintiff, in an action to foreclose labor liens, tried to the court. Affirmed.

*Guy B. Groff* and *William Hatch Davis*, for appellant.

*Charles H. Leavy*, for respondent.

TOLMAN, J.—Respondent and his assignors were employees of the appellant, each employed at a salary of $90 per calendar month, and they, with one other, making a crew of four, were engaged in operating what is known as a "bottle washing machine," and what is known as a "bottle filling machine." The men were supposed to report for work at 9:00 o'clock a.m., and to continue until the day's work was done. Usually in

[1]Reported in 212 Pac. 181.

the forenoon they operated the bottle washing machine, completing the cleansing of bottles by the noon hour, and thereafter they operated the bottle filling machine until the day's supply of milk was bottled ready for delivery. On the morning of August 6, 1921, the three men whose claims are involved in this suit, respondent, one Frank Bittanc, and one Pat H. Brown, did not report ready for work until about 9:15. Appellant's superintendent found fault with them because they were fifteen minutes late in reporting, and in effect said that thereafter they must be ready for work on the stroke of 9:00. Whether he went further and became abusive it is unnecessary to determine.

Within a few minutes after this occurrence, the three men quit their work and demanded their pay, which was then refused them upon the theory that, under their several contracts of employment, if they quit without notice their pay should not be due for thirty days. Within a day or two thereafter, lien claims were prepared under Rem. Comp. Stat., § 1149, duly filed and served upon appellant, and by written assignments dated August 10, 1921, Bittanc and Brown assigned their respective claims to respondent, who thereupon, on August 12 following, brought this action to foreclose the liens. From a judgment awarding respondent a recovery of $40.66 for labor performed by himself and his assignors, plus the cost of filing the liens, $40 attorney's fees, and costs of suit, and constituting the whole thereof a lien upon appellant's property described in the lien notices, this appeal is prosecuted.

Appellant raises a number of questions interestingly and extensively argued:

(1) That this action cannot be maintained on the assigned claims because it is contended that they were assigned to respondent subsequent to the commence-

ment of this action. The assignments are in writing, dated August 10, 1921, and these written assignments were offered in evidence. True, in his oral testimony respondent made some statements not in harmony with what the written assignments show. Notwithstanding this oral testimony, however, we cannot say that the evidence preponderates against the findings of the trial court to the effect that the assignments were timely made.

(2) It is contended that respondent and his assignors were not entitled to a lien upon appellant's property under Rem. Comp. Stat., § 1149, because there was no allegation or proof that appellant was a manufacturing company, or was carrying on any business which would make its property subject to labor liens under that statute. It is true that there is no allegation in the complaint as to what business appellant was engaged in, and the proof went only to the extent of showing that it operated a plant in which milk was passed and bottled, and these operations were defined to mean "passed milk is generally considered to mean clarification and pasteurization and bottling." It might well be held that such operations are not manufacturing, and that under that proof appellant was not a manufacturing company, but this question was not raised in the trial court, and we may not now consider it. There was no demurrer interposed to the complaint so as to raise this question, there was no challenge to the sufficiency of the evidence, and nothing whatever is shown from which we can say that the attention of the trial court was directed to this point. Under Rem. Comp. Stat., § 1736, we are required to examine into the evidence *de novo* in either legal or equitable cases tried without a jury, "so far as the findings of fact or refusal to make findings based thereon shall have been excepted

to, and the cause shall be determined by the record on appeal, including such exceptions or statement." Following this rule, we have in many cases refused to pass upon matters raised for the first time in this court, unless they go to the jurisdiction of the court. *Moran Bros. Co. v. Northern Pac. R. Co.,* 19 Wash. 266, 53 Pac. 49, 1101; *Powers v. Munson,* 74 Wash. 234, 133 Pac. 453; *Brengman v. King County,* 107 Wash. 306, 181 Pac. 861, and we cannot go to the extent of holding that the trial court was without jurisdiction.

(3) Appellant's third and last contention is based upon the written contracts or applications made by respondent and his assignors at or before the time they entered into the employ of appellant. The applications referred to contain a provision as follows:

"Notice of Leaving Service—If employed as a driver of a milk wagon I agree to give two weeks' notice before leaving the service, and if engaged in other employment, I agree to give one week's notice. In case I fail to give proper notice, I agree that my wages shall not become due and payable until thirty days after date of leaving."

To support this defense, appellant offered to prove that it was engaged as a purveyor of food products to the public generally; that it was necessary that these products be processed and delivered daily; that the operation of the machinery employed in processing required a degree of skill and experience to secure proper results; that it required a period of from one to three weeks to train an unskilled person to operate such machinery; that there was not at the time a supply of help skilled in the operation of such machinery available; that the products were of a highly perishable character requiring regular and continuous operation to preserve them, and that any want of skill in the

operation of these machines caused a decrease in the speed of the entire plant, and a deterioration in the quality of, and an injury to, the milk processed, and that by reason of these facts it was necessary that appellant have reasonable notice before the termination of employment, in order that others might be obtained and trained to carry on the work.

This offered testimony was all rejected, the trial court holding that Rem. Comp. Stat., § 7594, is controlling. The words in the statute applicable being: "And when any laborer performing work or labor as above shall cease to work whether by discharge or by voluntary withdrawal the wages due shall be forthwith paid either in cash or by order redeemable in cash at its face value." This statute has been considered or referred to in *Shortall v. Puget Sound Bridge & Dredging Co.*, 45 Wash. 290, 88 Pac. 212, 122 Am. St. 899; *State v. Chehalis Furniture & Mfg. Co.*, 47 Wash. 378, 92 Pac. 277; and in *Hatcher v. Idaho Gold & Ruby Mining Co.*, 106 Wash. 108, 179 Pac. 106, and it would seem that its meaning is no longer in doubt. In the *Shortall* case, a contract similar in its terms to those involved here was considered, and though that contract by its terms deferred the date of payment, should the employee voluntarily quit his employment, still the statute was held to be well within the rules of sound public policy, and to apply notwithstanding the contract.

It was said by Judge Dunbar in *State v. Chehalis Furniture & Mfg. Co., supra:*

"The second or concluding proposition in the statute is to the effect that when a laborer shall cease to work whether by discharge or voluntarily, he shall be entitled at once to receive the value of his services which have been performed, and shall not be compelled to await the process which it is convenient for corpora-

tions sometimes to adopt in the payment of wages to their employees. The object of this statute was to protect the laborer from the necessity of remaining around in the neighborhood where he had been employed, and waiting on expense the payment of wages which he had already earned.''

It is clear that the statute establishes a rule of public policy, and that the natural right of the employer and the employee to contract between themselves must yield to what the legislature has established as the law. To hold otherwise would put it within the power of every corporation employing labor, by exacting a contract before employing, to set at naught the plain provisions of the statute.

The judgment appealed from is affirmed.

MAIN, C. J., and HOLCOMB, J., concur.

PARKER, J., concurs in the result.