J. W. KONODE v. HOUSTON COLLIERIES COMPANY

(No. 6835)

Submitted February 24, 1931. Decided March 3, 1931.

228

*Thomas J. Michie, Jr.,* and *Strother, Sale, Curd & St. Clair,* for plaintiffs in error.

*Froe, Capehart & Miller,* for defendant in error.

LIVELY, JUDGE:

Plaintiff obtained a judgment of $131.90 against the Houston Collieries Company in a justice court. Upon appeal, the case was submitted to the court in lieu of a jury upon an agreed statement of facts. The circuit court's finding was favorable to plaintiff and defendant prosecutes this writ of error.

Plaintiff, an employee of defendant earning $4.12 per day, was discharged on November 15, 1929, at which time the defendant owed him $8.30 which it refused to pay. Plaintiff, then instituted this action to recover, in addition to the $8.30, an amount equivalent to thirty days' wages as a penalty, relying upon section 67d, chapter 15-H, Barnes' Code, which provides as follows:

> "Whenever an employer of labor shall hereafter discharge his or its employees without first paying the amount of any wages or salary then due them in cash, lawful money of the United States, or its equivalent or by check or draft, within seventy-two hours after demand, or shall fail or refuse to pay them in like money, or it equivalent or by check or draft, the amount of any wages or salary at the time the same becomes due and owing to them under their contract of employment, whether

employed by the hour, day, week or month, each of his or its employees so discharged may charge and collect wages in the sum agreed upon in the contract of employment for each day his employer is in default, until he is paid in full, without rendering any service therefor; provided, however, he shall cease to draw such wages or salary thirty days after such default."

To avoid the penalty, defendant bases its right of refusal upon the terms of a written agreement executed by both parties on October 11, 1928, which provided that "as an incident to such employment and for the better performance of the service", plaintiff was given the right to occupy defendant's house No. 26, located on its premises, at a stipulated amount per month, that if plaintiff ceased to work for defendant, his right to occupy the house likewise terminated, in which event plaintiff was to pay $2.00 per day as liquidated damages if he remained in said house after his employment ceased, and that "in case the termination of said occupancy from any cause, no moneys owing to him from the party of the first part shall be due and payable until he shall have vacated and surrendered possession" of the premises. It is the quoted provision which is the basis of the controversy and which plaintiff attacks as invalid. It is plaintiff's theory that the agreement (and particularly the quoted clause) cannot be enforced because it contravenes the statute; also that the agreement is not a contract of employment as contemplated by the statute and that the attacked clause is not supported by a sufficient consideration.

It is elementary that when the public policy has been expressed by the legislature, courts will not uphold contracts which violate such manifestations. The question here presented is novel in this jurisdiction, and counsel have been able to cite but three cases, decided in other states, which relate to the question. The decision in *Grayson Lumber Co.* v *Johnson*, 103 Ark. 266, was predicated on a statute (Digest of Statutes, 1921, sec. 7125) which provided that the unpaid wages of a discharged employee then earned "shall be and become due and payable" on the day of discharge. Likewise

the statute passed in South Carolina (Civ. Code, 1922, sec. 5592) declared that on discharge of laborers, wages earned "shall be immediately due and payable," and the statutory language was the basis of the conclusion in *Cato* v. *Mills*, 129 S. E. 203, to the effect that the laborer's right to immediate payment could not be waived by contract. These cases are not helpful in construing our statute. The Washington statute (Compiled Stat., 1922, sec. 7594) is similar to ours and provides that upon discharge "the wages due shall be forthwith paid." In *Burdette* v. *Broadview Dairy Co.*, 212 Pac. 181, the Washington court held that a contract of employment providing that if the employee fail to give two weeks' notice before leaving the service, his wages shall not be payable until 30 days after leaving, violated the provisions of the statute. The court stated: "To hold otherwise would put within the power of every corporation employing labor, by exacting a contract before employing, to set at naught the plain provisions of the statute." Such reasoning could not obtain in this jurisdiction because of a second statute (section 76, chapter 15-H, Barnes' Code) which, defining the time when wages are due, provides that employees shall be paid at least once every two weeks "unless otherwise provided by agreement." This has been the law since 1887, and even the section relied upon by plaintiff as the basis of his action, passed in 1919, recognizes that there might be a contract of employment fixing the due date of wages, and where there is one, we must resort to it to determine when wages are due. Hence, we cannot say that the letter of the statute is violated by the postponement of the payment of wages under a contract of employment.

But, plaintiff contends that the agreement of October 11, 1928, is not a contract of employment. It is true, as counsel points out, there are no provisions in the contract which of themselves create the relation of employer and employee; but the agreement recognizes that the relation already exists and so states; its provisions are so dependent upon the existence of some contract of employment and so closely allied thereto as to be a mere supplement to it and therefore a part of the original. The houses were maintained by the Collieries Company for the convenience of its employees, and the apparent

purpose for the questionable portion of the agreement was to obviate the necessity of resorting to legal procedure in order to obtain possession of their property. See *Angel* v. *Coal Company*, 96 W. Va. 47.

Counsel for plaintiff, in his brief and in oral argument, ably presented the reason for the enactment of this social legislation, and the court is not unmindful of the fact that the impecuniosity of laborers generally requires that upon discharge all earnings be paid to them, in order that they may move elsewhere and may bear their expenses while they seek other employment; nor are we unaware that this same condition may cause them to submit to conditions which indirectly strips them of their freedom of contract. It is likewise true that many of our laborers are illiterate and unwittingly execute agreements, the provisions of which are unknown to them. It is this type of unfairness to the laborer that the spirit of the statute attacks and attempts to remedy. Upon the agreed statement of facts, can we say that even the spirit of the law has been violated? There is no showing upon the record that plaintiff was coerced into executing the agreement or that he was illiterate and could not foresee the results of his agreement or that he was compelled to stay in defendant's house, after his employment ceased, because he had no money with which to seek another residence or for any other reason. Nor does it appear that he was discharged from service without good cause therefor, or that the employer breached, in any way, the contract of employment. Although it is true that the defendant under the rule of the *Angel* case might have dispossessed plaintiff, yet it was plaintiff's failure to vacate the premises which brought about this controversy. It is to be understood that this opinion merely determines whether or not the agreement before the court, in the light of the facts as disclosed by the record, contravenes the public policy as stated in Chapter 15-H, section 67b. Another agreement and a different statement of facts might clearly meet the conditions which the legislature attempted to remedy.

We find no merit in plaintiff's contention that there is no consideration to support the attacked portion of the agreement.

The judgment of the lower court is reversed and the case is remanded so that the lower court may enter judgment in accord with the tenor of this opinion.

*Reversed and remanded.*