[No. 28094. *En Banc.* August 7, 1941.]

LLOYD SMABY, *by his Guardian ad Litem, Glendola Thompson, et al., Appellants,* v. C. F. SHRAUGER *et al., Respondents.*[1]

[1]Reported in 115 P. (2d) 967.

*Henderson & McBee,* for appellants.

*Thos. K. Chambers* and *Williams & Davis,* for respondents.

STEINERT, J.—Five plaintiffs, or sets of plaintiffs, having separate causes of action, all of like tenor and effect, joined their causes in one complaint, each plaintiff seeking to recover a specific amount alleged to be due and owing him or her under an oral contract made with defendants. The court sustained defendants' demurrer directed to each of the five causes separately, on the ground that none of them stated facts sufficient to constitute a cause of action. Plaintiffs

refused to plead further, and the court thereupon entered judgment dismissing the entire action with prejudice. Plaintiffs have appealed.

The facts alleged in the complaint are as follows: During June, July, and August, 1939, appellants were employed as laborers by Budd Creek Placers, Inc., a Washington corporation carrying on a mining operation in Alaska. Respondents owned a majority of the capital stock of the corporation.

On August 27, 1939, the corporation was indebted to appellants in varying amounts for wages due and unpaid. Respondents on that day represented to appellants that the corporation was in financial difficulties and would probably be unable to pay them in full for the wages due them respectively. Respondents and appellants thereupon entered into an oral contract, under the terms of which each of the appellants agreed to make, execute, and deliver to Budd Creek Placers, Inc., a full written release of all wages and demands of any kind owing by the corporation to him or her, and respondents, in turn, agreed to see that the corporation then and there paid to each appellant the equivalent of a certain portion of the wages then due him or her, and further agreed, in consideration of such release, to pay, jointly and severally, the amounts of the several balances of wages due the respective appellants.

In compliance with that agreement, appellants Smaby, Lief, and Loy seasonably executed and delivered to the corporation a release reading as follows:

"Budd Creek, Alaska
August 26, 1939

"We, the undersigned, for value received do hereby waive any claim against Budd Creek Placers, Inc., for wages to this date,"

and appellants Tjernagel subsequently mailed to the corporation a release of the nature and kind contem-

plated by the oral contract. It will be observed that the written release antedates the oral agreement one day; that fact, however, is of no importance here.

Respondents performed that part of the oral agreement which obligated them to see that the corporation paid to each appellant a specified amount, and those various amounts were, in fact, paid to appellants by Budd Creek Placers, Inc. However, respondents refused to perform their agreement to pay appellants the wage balances due them. This action is based upon that refusal.

Prior to the argument in this court, the appeal of Ralph Loy, one of the five appellants herein, was dismissed upon stipulation of the parties.

Respondents have since moved that the appeals of Lloyd Smaby, Joe Lief, and Cecil Tjernagel be dismissed, on the ground that the amount in controversy in each of their causes was less than the jurisdictional amount required on appeal. The claim of each of those parties is for less than two hundred dollars.

Article IV, § 4, of the Washington constitution provides that the appellate jurisdiction of the supreme court shall not extend to civil actions at law for the recovery of money or personal property when the original amount in controversy or the value of the property does not exceed the sum of two hundred dollars.

It has long since been established in this state that where several plaintiffs or cross-complainants, having separate and distinct claims for money, are joined in one complaint or cross-complaint, the several amounts of their respective claims cannot be added together so as to confer a right of appeal either in favor of or against those plaintiffs or cross-complainants whose individual claims are under the jurisdictional amount. *Garneau v. Port Blakely Mill Co.*, 20 Wash. 97, 54 Pac.

771; *National Surety Co. v. Bratnober Lumber Co.,* 67 Wash. 601, 122 Pac. 337; *Cascade Const. Co. v. Snohomish County,* 105 Wash. 484, 178 Pac. 470; *State ex rel. Home Tel. & Tel. Co. v. Hurn,* 106 Wash. 362, 180 Pac. 400.

No question of assignment of the claims to one person, thereby creating an aggregate amount in excess of two hundred dollars, is here involved, as was the case in *National Ass'n of Creditors v. Grassley,* 159 Wash. 185, 292 Pac. 416.

The motion to dismiss the appeals of Lloyd Smaby, Joe Lief, and Cecil Tjernagel is accordingly granted.

This leaves for consideration only the appeal of C. J. Tjernagel and Agnes Tjernagel, his wife, whose claim is based upon the above mentioned contract between appellants and respondents. Two questions are thereby presented.

The first question is whether or not the contract here involved falls within the statute of frauds, Rem. Rev. Stat., § 5825, which provides, *inter alia,* that every special promise to answer for the debt, default, or misdoings of another person shall be in writing and signed by the party charged therewith, or by some person thereunto by him lawfully authorized. In this case, there was no writing signed by, or on behalf of, respondents, who are the parties herein charged.

It is a rule of universal recognition that a promise by one to pay the antecedent obligation of another, in consideration of an agreement by the promisee to cancel the antecedent debt, is not within the statute of frauds as being a promise to answer for the debt, default, or misdoings of another. The rule as just stated is supported by a long list of cases collected and cited in a Note (1931) 74 A. L. R. 1025.

As illustrative of the holdings of the various courts

upon that question, we quote from three decisions. In *Warren v. Smith,* 24 Tex. 484, 76 Am. Dec. 115, it was said:

"It is well settled that the clause of the statute of frauds, which relates to promises to answer for the debt, default or miscarriage of another person, has reference to promises which are distinctly collateral to the undertaking of the party originally liable. If the promise to answer for the debt of another is collateral only, and if the original liability continues to subsist, the collateral promise is within the statute; but if, by the new promise, the original liability is extinguished, then the new promise is not within the statute, but is regarded as an original contract, on sufficient consideration, which need not be in writing."

In *La Duke v. John T. Barbee & Co.,* 198 Ala. 234, 73 So. 472, appears the following statement:

"Where the original debtor is entirely released or discharged, and the obligation or promise of another is substituted in place of that of the discharged debtor, a new debt is thereby created, binding on the substituted debtor, which is not affected by the provision of the statute of frauds, . . . ."

In *Tannhauser v. Shea,* 88 Mont. 562, 295 Pac. 268, 74 A. L. R. 1021, the court said:

"And the rule is that where the promise is made to pay the antecedent obligation of another upon the consideration that the party receiving it will cancel such antecedent obligation, accepting the new promise in substitution therefor, it is an original undertaking or agreement and not a mere promise to answer for the debt of another within the meaning of the statute of frauds, and need not be in writing, and judgments are as much the subjects of novation as simple contract debts."

The question seems to be one of first impression in this court. However, the rule as above stated is eminently sound and is the one generally prevailing

throughout the country. We therefore adopt it as the rule to be followed in this state.

In the case at bar, appellants surrendered their claims against Budd Creek Placers, Inc., and accepted in lieu thereof the new promise of respondents. The original liability of the corporation was extinguished and no longer subsists; in place of it, the obligation of respondents was substituted, and a new debt was thereby created. The statute of frauds therefore has no application.

Respondents cite our own case of *Jannsen v. Curtis*, 182 Wash. 499, 47 P. (2d) 662, as holding to the contrary. In that case, however, the original debtor was not released from liability. Hence the rule stated above was not applicable there, and consequently the inhibition of the statute prevailed. That case has no bearing here, where the original debtor is shown to have been released from liability and where the obligation or promise of another has been substituted in place of that of the discharged debtor.

The second question involved upon the present appeal is whether or not the contract releasing the corporation from liability falls within the ban of Rem. Rev. Stat., § 7594 [P. C. § 3548], which reads:

"It shall not be lawful for any corporation, person or firm engaged in manufacturing of any kind in this state, mining, railroading, constructing railroads, or any business or enterprise of whatsoever kind in this state, to issue, pay out or circulate for payment of wages of any labor, any order, check, memorandum, token or evidence of indebtedness, payable in whole or in part otherwise than in lawful money of the United States, unless the same is negotiable and redeemable at its face value, without discount, in cash or on demand, at the store or other place of business of such firm, person, or corporation when the same is issued, and the person who, or company which may issue any such order, check, memorandum, token or

other evidence of indebtedness shall upon presentation and demand redeem the same in lawful money of the United States. And when any laborer performing work or labor as above shall cease to work whether by discharge or by voluntary withdrawal the wages due shall be forthwith paid either in cash or by order redeemable in cash at its face value on presentment at bank, store, commissary, or other place in the county where the labor was performed: Provided, such order may be given payable in another county when the place of employment is more convenient of access to the employee."

In this case, the labor was performed and the agreement was made, not in the state of Washington, but in Alaska. However, since the applicable law of Alaska was not pleaded, it must be presumed that the law of that territory is the same as that of this state. *Walnut Park Lumber & Coal Co. v. Roane,* 171 Wash. 362, 17 P. (2d) 896; *In re Barclay's Estate,* 1 Wn. (2d) 82, 95 P. (2d) 393.

If the agreement releasing Budd Creek Placers, Inc., from further liability is to be held void as violating Rem. Rev. Stat., § 7594, quoted above, then the corporation is still liable to appellants. And if the corporation is still liable, then the contract here involved does not come within the rule applicable to a promise to pay the antecedent debt of another in consideration of the cancellation of that debt. Under those circumstances the contract would fall within the statute of frauds for the reason that it is not in writing signed by, or on behalf of, respondents. If, on the other hand, the contract is not within the ban of Rem. Rev. Stat., § 7594, then, for the reasons previously assigned, it cannot be held to be within the statute of frauds.

Rem. Rev. Stat., § 7594, sometimes designated as the wage and employment statute, has been considered or referred to by this court in the following cases, among others: *Shortall v. Puget Sound Bridge &*

*Dredging Co.,* 45 Wash. 290, 88 Pac. 212, 122 Am. St. 899; *State v. Chehalis Furniture & Mfg. Co.,* 47 Wash. 378, 92 Pac. 277; *Hatcher v. Idaho Gold & Ruby Mining Co.,* 106 Wash. 108, 179 Pac. 106; and *Burdette v. Broadview Dairy Co.,* 123 Wash. 158, 212 Pac. 181. It is the consensus of these decisions that the statute declares a rule of public policy in this state designed to protect wage earners who are employed by corporations engaged in certain industries; and where an employer and his employee attempt to make a contract of employment in violation of the plain provisions of the statute, the natural right of the employer and the employee to contract between themselves must, as stated in the *Burdette* case, *supra,* yield to what the legislature has established as the law.

The evils sought to be overcome by that statute, and the policy adopted by the state with reference thereto, are well stated in two of the decisions above cited. In the *Shortall* case, *supra,* Judge Fullerton, speaking for the court, said:

"But we think the practice, pursued by certain employers of labor, of paying the wages of their employees in orders drawn upon stores redeemable in commodities other than lawful money of the United States, and of postponing the day of payment until long after the wages were earned, was a real evil, operating to the detriment of the wage earner, and consequently to the detriment of the state. As such the practices were subject to correction by the legislature, and its act in that regard was well within the rules of sound public policy."

In *State v. Chehalis Furniture & Mfg. Co., supra,* Judge Dunbar, writing the opinion, had this to say with reference to the first part of the statute:

"The evident intention of the legislature in passing this law was to prohibit the pernicious habit which had theretofore frequently been indulged in by factories of different kinds of paying the laborers in

checks which were only redeemable in goods which were to be furnished by the company store."

And in discussing the second part of the statute, Judge Dunbar said:

"The object of this statute was to protect the laborer from the necessity of remaining around in the neighborhood where he had been employed, and waiting on expense the payment of wages which he had already earned."

We have quoted rather extensively from these decisions because we now endorse and adhere to what was therein said. However, we are of the opinion that none of them, nor the rule of policy therein declared, meets the situation presented here.

It is first to be noted that in each of those cases the workman was suing, or at least was concerned in the action, to compel the employer to pay the wages alleged to be due the workman, while, in this case, the employer is not involved at all, and the only persons here concerned are the workmen and the respondents, who were not their employers. In the next place, it is to be noted that, in each of the cases wherein the statute was held to be applicable, the employer had endeavored, by his contract, to postpone the date of final payment of wages in the event that the employee ceased work, while, in this case, the employer, Budd Creek Placers, Inc., has made no contract of that kind, or of any kind, with appellants, and has in no sense attempted to violate any of the provisions of the statute.

The situation here is simply one where the employer was unable to pay in full the wages due appellants, and the latter, recognizing that fact, voluntarily entered into an agreement under which the obligation was assumed by respondents, who presumably are solvent. In other words, by the substitution of

debtors the condition of appellants has been improved and benefited, not jeopardized nor hampered. Instead of having to look to a doubtful source and time of payment, they are given a contract which, if legally enforcible, will assure them of payment in full within a reasonable time. The rule of public policy adopted by the legislature was for the wage earner's protection, not for his embarrassment. In our opinion, the statute was never intended to prevent a workman from making a contract to relinquish his claim against an insolvent or financially embarrassed employer, in consideration of the substitution of a debtor who was solvent and legally liable in place of the debtor who had been discharged.

We therefore conclude that the contract here sued on does not come within the ban of Rem. Rev. Stat., § 7594. The contract thus being valid, the liability of the corporation was by the terms of the agreement extinguished, and in place of the original debt of the corporation, the debt of respondents was substituted, upon which recovery may be had.

The judgment is reversed on the appeal of C. J. Tjernagel and Agnes Tjernagel, his wife, with direction to the trial court to overrule respondents' demurrer to the complaint.

ROBINSON, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.

BLAKE, J. (dissenting)—If this were an action by plaintiffs against Budd Creek Placers, Inc., it would seem quite obvious that the latter would not, in face of Rem. Rev. Stat., § 7594, be heard to say that it had got out from under its liability for wages by shifting its obligation to Shrauger and Wallgren.

Contracts in contravention of the terms of the statute are against public policy and, therefore, void.

*Shortall v. Puget Sound Bridge & Dredging Co.,* 45 Wash. 290, 88 Pac. 212, 122 Am. St. 899; *Burdette v. Broadview Dairy Co.,* 123 Wash. 158, 212 Pac. 181. In the latter case, the court said:

"It is clear that the statute establishes a rule of public policy, and that the natural right of the employer and the employee to contract between themselves must yield to what the legislature has established as the law."

In those cases, it was held that the employees were entitled to their wages upon ceasing work notwithstanding contracts made by them deferring time of payment. In other words, the liability of the employer to pay in accordance with the terms of the statute was not modified or extinguished by the agreement. Applying the statute and the principle enunciated in those decisions to the facts in the case at bar, it would seem clear that the release signed by appellants was void. I think their right to hold the Budd Creek Placers, Inc., for their wages was not extinguished by it. It would follow, therefore, that appellants do not stand within the rule they seek to invoke—for it is of the essence of the rule that the principal obligor be released from liability.

The judgment should be affirmed.

Main, Millard, and Driver, JJ., concur with Blake, J.